ALEXANDER P. GREEN AND OTHERS v. WILLIAM H. CROW, ADM'R.

The witness, for the want of whose testimony the continuance was sought, re-sided two hundred miles from the Courthouse, and the commission not hav-ing issued until the fifth of March, the trial being on the second of April, there was not such diligence as would entitle the application to favor.

The affidavit, (for a continuance) does not state positively, that the witness would testify to certain facts, but that the affiant was told by reputable per-sons, the witness would so testify.

The fact to be proved, viz : the place of domicil of the deceased, was one which most probably would be known to many in the town of Jefferson and vicini-ty, where the deceased had formerly resided, and the refusal of the continu-ance would not be likely to operate to the prejudice of the plaintiffs. On the trial there was testimony to the fact, from five or six witnesses.

Further, this was the third application for a continuance, and the discretion exercised by the Court on the third and succeeding applications, over the question of continuance, is not, as a general rule, the subject of revision ; at least this is not such a case of such flagrant injustice and wrong, as to induce the interposition of an appellate Court.

Under the law of 1848, the homestead or substituted allowance is not to be designated out of every estate, for the widow and children, but only in cases where the estate is insolvent ; or, if set apart from a solvent estate, no per-manent interest or estate can enure to the beneficiaries, as the whole estate, including the portion for the widow and children, is distributable among the heirs and distributees.

The payment and division of the allowance to widow and children of a deceased person, where the property of the estate of such person, exclusive of the al-lowance, is insufficient to pay the debts, is final and absolute, without re-mainder, or ultimate liability to creditors, or others interested in the estate.

The right of the widow and children of a deceased person, whose estate is in-solvent, to the homestead or substituted allowance, depends on the question whether the domicil of the deceased was in this State at the time of his death, and is not affected by the fact that the widow and children may have abandoned the State, or may intend to abandon it, as soon as the homestead or substituted allowance is assigned to them.

It seems that the homestead may be assigned to the widow of a deceased per-son, on application of the administrator.

Taking the case in connection with Edmiston v. Long, Ante, 135, quere,

whether the right of a widow to have the homestead set apart to her, is assignable before the order of Court has been made so setting it apart.

Appeal from Cass. Tried below before the Hon. William S. Todd.

The application for a continuance stated, that on the 11th day of February last, interrogatories were filed in the Clerk's office of this Court, to Francis A. Sayre, a resident of Dallas County, Texas, a distance of about two hundred miles, and forwarded for execution about the fifth of March ; that affiant believed the testimony of said Sayre to be material to plaintiff's cause, from the fact that he was living with defendant's intestate before and at the time said intestate left Jefferson for Florida, and had charge of his drug store, and was in his confidence ; that affiant was told by respectable persons, that said Sayre would testify that said intestate had previous to his death, moved to and permanently settled at Key West, in Florida, in order to improve his health ; that plaintiffs expected to prove the same facts by one George Burritt, but that up to this time, his residence could not be ascertained, and that as soon as the materiality of said Sayre's testimony was known, steps were taken to procure the same by filing interrogatories to him as before stated, and forwarding a commission ; that affiant knew of no other person by whom the same facts could be proved, and that the application was not made for delay, but that justice might be done. The appeal from the County Court was in February, 1855. The application for continuance was at the Spring Term, 1856, April 2d, and was their third application.

Mrs. Pugh was not a party to the proceeding, and exception was made by the creditors on that ground, but it did not appear that the objection was called to the attention of the Court.

*T. J. & J. H. Rogers*, for appellants, cited Hipp v. Huchelt, 4 Tex. R. 20, as to the refusal of the continuance ; and

Trawick v. Harris, 8 Tex. R. 312, and The State v. Frost, 4 Harring. R. 558, on the merits.

*T. J. Jennings*, for appellee.

HEMPHILL, CH. J.   The appellee, as administrator of Thos. F. Pugh, dec'd, moved the County Court to set apart to the widow of the intestate, (who died insolvent and without a child,) the one year's maintenance, to which she was entitled under Art. 1153, (Hart. Dig.) and also all such property as may be exempted from forced sale under the Constitution and Laws of this State, and to which she was entitled under Art. 1154.   The appellants appeared, and objected to the application ; but the Court overruled their objections, and ordered the year's maintenance, and also decreed the homestead of the deceased, consisting of a house and three lots in the town of Jefferson, to be set apart to the widow, her heirs, administrators and assigns, in fee simple, forever.   The appellants, who are creditors, appealed to the District Court ; and the judgment of the County Court having been in effect sustained, the cause was appealed to this Court.

The first objection urged by the appellants, in their brief, is the supposed error in overruling the plaintiff's application for a continuance.   In answer to this objection, it may be said in the first place, that the witness (for the want of whose testimony the continuance was sought,) resided two hundred miles from the Courthouse, and that the commission not having issued until the 5th of March, the trial being on the second of April, there was not such diligence as would entitle the application to favor.   The affidavit does not state positively, that the witness would testify to certain facts, but that the affiant was told by reputable persons, the witness would so testify.   The fact to.be proven, viz : the place of domicil of the deceased, was one which most probably would be known to many in the town of Jefferson and vicinity, where the deceased had formerly

resided, and the refusal of the continuance would not be likely to operate to the prejudice of the plaintiffs. On the trial, there was testimony to the fact, from five or six witnesses.—Further, this was the third application for a continuance, and the discretion exercised by the Court, on the third and succeeding applications, over the question of continuance, is not, as a general rule, the subject of revision ; at least this is not a case of such flagrant injustice and wrong, as to induce the interposition of an appellate Court. (4 Tex. R. 22.)

The second objection was error in not allowing plaintiff to prove on cross examination, by witness Speake, that the said widow resided at her father's house in the State of Alabama, from and after intestate's death, for nine or ten months, as a home, and that some person wrote to her from Jefferson, stating that unless she would visit Jefferson, for the purpose of claiming said property as a homestead, she would lose the same ; that she came in accordance with said letter, and only intended to remain long enough to get said property by law, then to sell the same and to leave the State, and to go to her father's again in Alabama, and there reside permanently.

Before considering whether there was error in excluding this testimony, I will state that the great question in the case was as to the place of the domicil of the deceased, at the time of his death, whether in the town of Jefferson, Texas, or at Key West, Florida. This was the only point which the Court below deemed of sufficient importance to require instructions to the jury. The evidence was that the deceased had been in bad health for years ; that he travelled some summers for the benefit of his health ; that finally he repaired to Key West, accompanied by his wife and a child that afterwards died.—There was a great preponderance of evidence, that he intended to return, if he was restored to health, though there was proof of statements from the deceased to the contrary. He died some time after he reached Key West. After his death, his wife went to her father's, in Alabama, and remained there for some months, until she returned to Texas.

It may be further stated, also, that the Court, on the supposition that the domicil of the deceased was in Jefferson, instructed the jury to the effect, that although Mrs. Pugh may have been absent from the State, yet she was entitled to all the rights of a surviving wife, under the Constitution and Laws of the State, and that the Probate Court, in the assignment of property, made for her benefit, acted in the rightful discharge of its duty.

Admitting (and such is the effect of the evidence and the verdict of the jury,) that the domicil of the deceased was in the town of Jefferson, has the widow lost her right to the homestead, by her absence, under the circumstances, at her father's house in Alabama, with the additional fact of a declared intention to sell the property set apart to her and remove permanently from the State. The solution of this question will depend, to a considerable degree, upon the extent or quality of the estate in the homestead, or portion assigned the widow, on her husband's death.

For convenience, the right of a widow alone will principally be considered ; there being no children. It is a matter of some interest, to trace the rise and progress of the beneficent provision by which a portion of an estate of a deceased husband is secured against creditors, for the benefit of a surviving wife. Under the Spanish Code, in force until 1840, a widow, without property of her own, was entitled (in preference to creditors,) to one fourth of the estate of her husband ; this fourth not to exceed a specific amount. This provision fell with the repeal of the Spanish Law, and there was no substitution for it, until by the Act to amend the Probate Law in 1843, (Hart. Dig. Art. 1061,) such of the effects of the deceased as by law were exempt from execution, were directed to be set apart for the use of the widow and children of the deceased. This law was illusory in its promises of benefit, and unequal in its operation. In some estates, there might be a homestead, together with all the other articles exempted

from forced sale. The widow, in such case, would derive a substantial benefit. In other estates, there might not be any of the exempted articles, and nothing then would be set apart for the wife. But the provision was enlarged, equalized and rendered certain in its operation, by the law of 1846, (Hart. Dig. Art. 1107,) which declared that not only such property as is exempted from forced sale, should be set apart for the widow and children, but if there should not be, among the effects of the deceased, such specified articles, there should be sold a sufficiency of the estate to procure such exempted articles for the benefit of the widow and children. These laws vest a right in the widow to a specific portion of the estate, viz : the homestead and the exempted articles, but the grant is restricted to this species of property. For, although, if these articles be not found in the estate, a sale may be ordered for the benefit of the widow and children ; yet, it is only to procure by purchase a homestead and other exempted articles, and not otherwise for the use or advantage of the widow or children. What may be the extent of the interest of the widow and children in the property set apart to them under the laws of 1843 and 1846, need not be considered.

We come now to the provision of the law of 1848, under which the widow in this case claims, and which modifies and enlarges the grant under former law, in behalf of the widow and children of the deceased. By the 44th Section of the Act of 1848, (Hart. Dig. Art. 1153,) an allowance is to be made to the widow of one year's maintenance ; and by the 45th Section, (Art. 1154,) all the property exempt from execution, except one year's supply of provisions, is to be set apart for the use and benefit of the widow and children. So far the Section is in substantial conformity with the previous laws of 1843 and 1846 ; but the Section continues, that in case there should not be among the effects of the deceased, all or any of the specific articles so exempted, it shall be the duty of the Chief Justice (not, as by the law of 1846,) to cause them to be

procured, but to make an allowance in lieu thereof to the widow and children ; which allowance may be paid either in money or in property of the deceased, that the widow and children may choose to take at the appraisement ; or a part in both as they may select. If there be no property of the estate, that the widow and children are willing to take for the allowance, or not a sufficiency, and there be no funds or not sufficient funds in the hands of the executor or administrator to pay such allowance, then so much of the estate may be sold, as will be sufficient to raise the allowance or a part therof, as the case may require ; the allowance to be paid in the following manner : If there be a widow and no children, the whole to be paid to the widow ; if there be a child or children and no widow, then the whole to be paid to such child, or to be equally divided among such children ; If there be a widow and a child or children, one half to be paid to the widow, and the other half to such child, or to be equally divided among such children : Provided, that if such estate be not insolvent, nothing in this Section shall be so construed as to prohibit the distribution and partition of said estate among the heirs and distributees thereof, including the portion herein provided to be set aside for the use of the widow and children ; and provided that a year's provision should be exempted from such distribution.

We have cited, in substance, the whole of the Section, as the legislative intention can be deduced with more certainty from the entire provision, than from its detached or separate portions. Unlike the previous laws, to which we have referred, the homestead, or, (under this Section, the substituted allowance,) is not to be designated out of every estate, for the widow and children, but only in cases where the estate is insolvent ; or, if set apart from a solvent estate, no permanent interest or estate can enure to the beneficiaries, as the whole estate, including the portion for the widow and children, is distributable among the heirs and distributees. But in this

case we need not consider the duties of the Chief Justice, or the rights of widows and children to this allowance, or the extent of their interest in it when made in cases where estates are solvent. The case before us is one of an insolvent estate, and the question is, as to the extent and character of the interest of the widow and children's allowance out of such estate ; or, as in this case, of the allowance to the widow alone ; and it seems very clear that the Legislature, contemplating the insolvency of the estate, and that the whole would be absorbed by creditors, leaving the widow without the means of subsistence, intended to make such provision as would, to some reasonable extent, afford her a support, or at least relieve her from want and the pressure of necessity ; and that this provision was intended to be permanent and absolute. Where the allowance is paid in money or other property, to a widow and children, (if there be children,) it is divided, not according to the general law of distributions, but, by the special law of the Section, one half is paid to the widow, and the other half divided among the children. Is there any thing in the letter or spirit of the law, from which it could be concluded, that at some future day the widow and children were to account for their portions thus received ? To whom or for whose benefit should they account ? not for the benefit of creditors, for the allowance is made in contravention of their rights ; or, rather, they have no rights in the matter ; the claim of the widow and children to their allowance being superior in right to claims of creditors against the estate of the deceased, except claims for funeral expenses, and expense of last sickness. (See Arts. 1187—1189.) Nor can they be made to account to the heirs of the deceased, because, as heirs under the general law of descent, they can have no interest. The estate being insolvent, the creditors have rights to the assets superior to that derived from heirship under the general laws of distribution. But the creditors themselves have no rights as against the claim of the widow and children to the allowance,

consequently the heirs whose rights are inferior, can have none. The payment and division of the allowance, as regulated by the statute, is intended to be final, without remainder or ultimate liability to creditors, or others interested in the estate. In fact the estate of the widow and children, in such allowance, is as absolute as that of the widow and children to their reasonable parts by the ancient Common Law or Custom of London. (2 Blackstone, 491—2.) These positions are indisputable when considered with reference to the money or other property paid the widow as an allowance in lieu of the homestead ; and there is nothing in the Section to justify the supposition that a less estate is vested, where the homestead and other articles exempt from execution are assigned the widow, than where the allowance is made up out of other property, or is paid in money. In either case, the interest of the beneficiaries is absolute, and being absolute in the widow on assignment, she, as owner, has the right of disposition, there being no law repugnant to, or in abridgment of that right.

These views, as to the absolute and plenary ownership of the widow and children in the property assigned them as an allowance, have reference to insolvent estates. In cases where there is sufficient property (independent of the year's provision, and the allowance to the widow and children,) for the payment of the debts of the estate, the assignment of such allowance to the widow is not conclusive, for, by the statute, it is subject to distribution among the heirs ; but what is the rule for such distribution, whether that prescribed by the general law or by this 45th Section, need not be considered.

So far as the evidence which was excluded in this case conduced to prove an intention, in the widow, to sell the property after assignment to her, it was wholly immaterial. Whether she intended to sell or not ; or whether she sold or not, after the property vested in her, was a matter which concerned herself alone, and in relation to which, as owner, she

must be permitted to consult her own interest, and exercise her pleasure.

The evidence of her intention to sell was inadmissible on another ground, viz : that if even the act intended would, if done, involve a forfeiture, yet no such consequence follows from a mere intention which might change, and never be consummated by act. Her intention to sell and change her domicil, was not material to the matter in issue, and that portion of the evidence was properly excluded.

Nor is there any thing material in the evidence of her residence at her father's for nine or ten months after the death of her husband. To seek shelter at her father's house, and consolation in her afflictions, was natural ; and it would be strange if such an act should be followed by a forefeiture of her rights. But it is immaterial where she resided before the homestead was assigned to her by order of the County Court. She might have claimed to live at the homestead until it could be ascertained whether the estate was solvent or insolvent, and whether the homestead or other allowance would finally be assigned to her in absolute property, under this Section ; or whether, the estate being solvent, the whole, including the portion, would be distributed among the heirs. The Chief Justice is not required to set apart the homestead or allowance in lieu thereof, to the widow, until the return of a list of claims,* though she cannot be excluded from it, if she desires to remain, and this may not be for twelve months. In the mean time the widow is not bound to reside at the homestead. She is not to be confined to the spot, without regard to convenience or inconvenience, prejudice or otherwise. Her rights are not dependent on the whereabouts of her residence after the death of her husband. If the husband had a domicil at

---

* The Chief Justice has probably mistaken the terms " list of claims," used in Art. 1154, for the list of claims against the estate referred to in Art. 1191, instead of the list of claims in favor of the estate referred to in Art. 1148.— Reps.

the time of his death, she is, under the Section in case of insolvency of the estate, entitled in full property to that domicil, not so much because it is a homestead, as because the law intervenes and guarantees to her a portion of the estate for her comfort and maintenance, independent of, and superior to, the claims of creditors, except for funeral expenses and those of the last sickness. She not only did not abandon her husband during life, but she was his ministering angel through long years of sickness, and in the closing scenes of death. She did not abandon the family altar, and does not come within the principle of the exception in the case of Travick v. Harris, and Earle v. Earle. She had not forfeited her right to the homestead during the life of her husband, and it was immaterial where she resided after his death. Let her reside where she will, she is entitled to the allowance, whether it be the homestead or money, which is secured to her by the statute. After the assignment, and after the property is vested in her, she may forfeit her homestead by abandonment, but that would be for the benefit of her creditors, and not those of the deceased. There was no error, therefore, in excluding the evidence offered, as the facts to be proven were not material to the issue.

Nor is there any ground shown why the judgment should not be sustained. Had there been proof, as was pleaded, that the widow had in her possession a large amount of money, assets of the estate, this would, unless she surrendered the funds, have excluded her from the benefit of the allowance. But no such fact was proven in the cause.

She has not forfeited her claim by laches or unnecessary delay in its prosecution ; nor has any good ground to deprive her of her legitimate portion been substantiated by the evidence.

It is unnecessary to notice the other points, as the opinion, on the questions discussed, is decisive of the cause. There being no error, the judgment is affirmed.

Judgment affirmed.