J. JUDSON REEVES ET AL. v. PETTY & GOODNER.

1. HOMESTEAD.—In insolvent estates, under the probate act of 1848, the homestead descended to the widow and children of the deceased in fee, free from all express lien creditors.
2. SAME.—Creditors secured by trust deed signed and duly acknowledged by the husband and wife upon the homestead, after the death of both the grantors and the majority of their children, cannot enforce the lien, even though the premises have been abandoned as homestead.

APPEAL from Hopkins. Tried below before the Hon. W. H. Andrews.

November 1, 1869, Petty & Goodner sued J. Judson Reeves, his two sisters, and their husbands. The pleadings and evidence show, that on April 17, 1860, J. J. Reeves, joined by his wife, E. M. Reeves, executed to F. M. Rogers, the wife being privily examined, a deed of trust to secure Petty & Goodner harmless on two notes due A. H. Shepherd, one for $300 and the other for $1,500, each due 1st March, 1861, bearing even date with the deed of trust, on which notes they became bound with said J. J. Reeves. The deed of trust described and created a lien on a lot of land in the town of Sulphur Springs, in Hopkins county, on which was a house in which Reeves and wife resided, and in which he kept a drug store. The deed of trust was duly recorded.

That in the year 1863 the said Reeves died wholly insolvent, and that in 1866 E. M. Reeves, the wife, died, also wholly insolvent; that no administration has ever been had on either estate.

That at the death of the wife she left surviving her as her only heirs at law (children) the defendants, J. J. Reeves, Mary Barrett, and Laura Mathews.

That the defendant, J. J. Reeves, is about thirty years old; that he left and abandoned the property mentioned soon after the death of the mother in 1866; that the two daughters, Mary and Laura, in the beginning of 1867, intermarried with their present husbands, abandoned the property, and removed from the county of Hopkins to the county of Titus, and there procured homes, and there continue to reside.

That all of the defendants were over twenty-one years old at the time of filing the suit.

That the whole of the money due on said notes has been paid by plaintiffs.

The demurrer to the petition was sustained, and plaintiffs

appealed to a former term of this court. On the appeal judgment was reversed. The opinion of the court not having been published, is here given. (Delivered January 2, 1873.)

WALKER, JUSTICE.—J. J. Reeves and wife executed a deed of trust to F. M. Rogers to secure the appellants harmless on two promissory notes due A. H. Shepard for the aggregate sum of $1,800, which notes were indorsed by the appellants.

The deed of trust was given for a lot and improvements in the town of Sulphur Springs. Reeves lived upon the property, and carried on the business of druggist. He died insolvent in 1863, and his wife died in 1867. The appellees are the children of J. J. Reeves and wife. J. J. Reeves is about thirty years old, and does not reside upon the property. Mary married Barrett, and Laura married Mathews. All of appellees were over the age of twenty-one when the suit was instituted. The appellants have paid the notes to Shepard. Upon this state of facts the appellants are entitled to have the property sold and to be repaid the money, principal and interest, which they have paid on Shepard's notes.

If the children and heirs take this property on the death of their parents, they must take it subject to the incumbrance; they cannot succeed to the homestead rights of their parents unless they have remained together as a family and occupied the property as a homestead.

It is not necessary that we should here decide whether the deed of trust would override the homestead right of a family of minor children remaining together as a family and occupying the property, or of a surviving widow, the head of a family. When it shall become necessary that this troublesome question should be decided by this court upon a fair statement of facts we will endeavor to give it its solution. The judgment of the District Court is reversed and the cause remanded.

(June, 1873, a trial was had, the judge instructing the jury in accordance with the opinion of the Supreme Court. Verdict and judgment for plaintiffs, from which defendants appealed.)

*W. C. Loring* and *C. W. Winbray*, for appellant, in an elaborate argument, discussed the Texas cases on homestead rights.

*Walton, Green & Hill*, for appellees.

IRELAND, ASSOCIATE JUSTICE.—In 1860 J. J. Reeves and wife became indebted for money borrowed, and gave a mortgage with a power of sale to a trustee to sell the property in case appellees had the notes to pay, they having indorsed for Reeves. It may be admitted that appellees did pay off the debt, though there is some controversy about some alleged payments by Reeves's widow to appellees, consisting of a carriage and some Confederate money. The property in controversy was the homestead of Reeves and family at the date of the mortgage and up to the death of both Reeves and wife. At the date of the death of the wife, who died last, there remained of the family some minor children who continued to reside at the homestead some time.

They then rented the property and went to reside with some relatives.

There was no administration on the estate of either husband or wife, and it is conceded that the estates were insolvent.

This suit was brought against the children of Reeves, all of whom were of age when the suit was brought, to subject the property to the mortgage given appellees as an indemnity, and the main question for our consideration is, "Is this property, under the circumstances, liable to be taken by appellees to reimburse them for the money paid, or does it belong to appellants, discharged of this lien?"

If the appellants, at the death of their ancestors, took

only a determinable estate, that is, a mere use in the property during their minority and so long as they occupied it as a home, then the mortgage can be enforced; but if the interest descending to the children, this being an insolvent estate, was an absolute fee-simple estate, then the mortgage cannot be enforced.

The appellants, children, were all of full age when this suit was brought. This is an interesting question, and, viewing it as an original one, it furnishes a rich field for the mind and pen; but we do not believe that we are at liberty to regard it as an open question in this court. We know that it is said that, to sustain the proposition that at the death of the husband, since the adoption of the constitution of 1846 and the passage of the probate law of 1848, the widow and child or children in insolvent estates take a fee-simple estate in the homestead and other property set apart to them, and especially when the ancestors had encumbered it in their lifetime, is a hardship on creditors; but it must be borne in mind that when creditors deal with the homestead they are supposed and do actually do so with reference to the law as it is understood and interpreted by the courts.

It has been the understanding of the profession, ever since the law of 1848 first underwent a discussion in this court, that the claims of the widow and children, or either, as the case might be, were superior to the rights of express lien creditors, and that in cases where the estate is insolvent, in the language of Chief Justice Hemphill, "The case before us is one of an insolvent estate, and the question is as to the extent and character of the interest of the widow and children's allowance out of such estate, or, as in this case, of allowance to the widow alone; and it seems very clear that the Legislature, contemplating the insolvency of the estate, and that the whole would be absorbed by creditors, leaving the widow without the means of subsistence, intended to make such provision as would, to some reason-

able extent, afford her a support, or at least relieve her from want and the pressure of necessity, and that this provision was intended to be permanent and absolute." (Green v. Crow, 17 Tex., 188 )

The question involved in the case from which we have quoted is the precise point involved in the case at bar.

That case seems to have been well and thoroughly matured, and the rule there laid down is recognized in Sossaman v. Powell, 21 Tex., 665 ; O'Docherty v. McGloin, 25 Tex., 67; James v. Thompson, 14 Tex., 466 ; Lockhart v. White, 18 Tex., 108 ; Runnels v. Runnels, 27 Tex., 515 ; Robertson v. Paul, 16 Tex., 474.)

When we reflect that those who sat in judgment in these cases were men who were here at the birth of the republic, and who exchanged it for a membership in the family of States, and who drew up, gave shape to, and aided in the passage of many of our laws, we may not wonder that those of us who follow have a deep veneration for this work, and dislike to see the symmetry of the temple defaced or marred.

Nor is it doubted that the doctrine laid down in Paul v. Robinson, 16 Tex., as to the revocation of the power to sell by the death of the constituent, has been questioned by some of our ablest lawyers. This rule, however, was adopted by the same judges that decided the other cases referred to, and it has been approved by this court in subsequent cases, and has become a rule of property, like the other, to an extent that it would be a great shock to society to disturb it.

Absolute perfection is not attainable in a system of laws, and it is more desirable to have stable rules to which society can adapt itself, than to be undergoing continued changes to suit the views of each succeeding change in the courts or profession.

It is insisted by counsel for appellees that this case is *res adjudicata*, and that this court is bound by the judgment of our late predecessors.

To this suggestion we cannot assent. It is true that it is

always desirable that the court below should adhere to the particular rule laid down by this court in a particular case; and whether it will do so must be left to its own judgment, unless the judgment or orders of this court should go below in the shape of a *mandamus* or a peremptory order to proceed with a case in a particular way. In this case, however, the court below decided in accordance with the opinion and judgment of our late predecessors; and if it is to be understood that the rulings of this court in this case are to be regarded as binding on us we cannot sanction the proposition. The rule of *stare decisis*, to which we have adverted in this opinion, does not apply to a ruling made by our immediate predecessors, when that ruling overturns a long-established rule of property; and in so far as this opinion is in conflict with the opinion of this court to be found copied into the transcript, that opinion is to be regarded as overruled.

In the charge of the court to the jury the court said that if the appellants took this property they must take it subject to the debt of appellees. There was a verdict and judgment in accordance with this charge, which is assigned as error, and for the error therein committed the judgment is reversed and the cause remanded, with directions to the court below to proceed to trial in accordance with the views expressed in this opinion.

REVERSED AND REMANDED.

[Justice MOORE dissenting.]