[Opinion delivered May 24, 1880.]

---

M. Schwarzhoff v. Anna Necker et al.

(Case No. 4043.)

1. Hearsay.— If the declarant be living he must be produced in court, and to permit one to testify over objection as to declarations of a party concerning the death of the declarant's mother is erroneous. 1 Wharton on Ev., sec. 215; Johns v. Northcutt, 49 Tex., 554.

2. Proof of death.— Testimony of witnesses, one that "the last I heard of Mrs. Harms was during the war after the divorce. I understood she lived with a man named Eisemann in 1863 or 1864, in Galveston. There was a report that she was dead, but I cannot say anything about her. I think I heard the report of her death several years ago;" another, that "the last I heard of Mrs. Harms was during the late war." "I never heard of Mrs. Harms after she left old Mr. Harms; that is, since eighteen or twenty years;" and another, that "I have heard nothing from my former wife since the divorce. Anna Necker told me her mother was dead; that a report of her death reached her; that she died not long since. I never inquired as to my former wife in Galveston," is insufficient to prove the death of a party. 2 Wharton on Ev., sec. 1274.

3. HOMESTEAD.— The grandson of a divorced wife forms no constituent of a family within the meaning of the law regulating the homestead.

4. ABANDONMENT OF HUSBAND BY WIFE FORFEITS HOMESTEAD.— The wife who abandons the husband without cause is not entitled to homestead rights. Sears *v.* Sears, 45 Tex., 557; Newland *v.* Holland, id., 588.

5. HOMESTEAD — REMAINING CONSTITUENTS.— As the remaining constituent of the family the husband may dispose of the entire interest in the homestead; the remainder, after his death, in the wife's community, to go to her heirs at his death.

ERROR from Comal. Tried below before the Hon. G. H. Noonan.

M. Schwarzhoff brought an action of trespass to try title for a house and lot in New Braunfels against Julius Harms. Harms pleaded not guilty; that the lot was his homestead, etc.; reconvened in damages for wrongful suing out sequestration, etc.

Pending the suit, Anna Necker and her husband intervened, alleging that she was the daughter of Mrs. Lina Harms, the divorced wife of defendant, by a former marriage; that the lot was community property of defendant and Lina Harms; that it was their homestead; that they had been divorced in 1863 at husband's suit; that she was dead, and intervenor was her heir and entitled to half of the property; asking partition, etc.

Plaintiff replied to the intervention, substantially, that Mrs. Lina Harms had abandoned defendant, Julius Harms, and had lived in adultery, and that she was not dead; replied to the claim for homestead rights, that it was *res adjudicata* in a foreclosure suit against defendant, under which proceedings plaintiff had purchased; that at time of the mortgage, etc., defendant Harms had occupied the lot and had no family; that intervenor had been married several times and formed no part of his family, etc. On the trial plaintiff read the mortgage by Harms to plaintiff, of date May 15, 1876, decree of foreclosure, order of sale and sheriff's deed to herself.

It was in evidence that defendant and Lina Harms mar-

ried between 1846 and 1850; that they settled on the lot in 1856, and defendant had lived there ever since; that Lina abandoned her husband in 1859 or 1860, having eloped with one Eisemann, and lived with him in Galveston; that intervenor was her daughter by a former marriage, and had been married three times; was about forty years of age; had at times lived with defendant, but not since 1866. Witness Seele testified as to the death of Lina Harms as follows: "The last I heard of Mrs. Harms was during the war after the divorce. I understood she lived with a man named Eisemann, in 1863 or 1864, in Galveston. There was a report that she was dead, but I cannot say anything about her. I think I heard the report of her death several years ago."

F. Wagenfuhr testified: "I knew Mrs. Harms and defendant Harms; the last I heard of Mrs. Harms was during the late war."

Nicholas Holtz testified: "I never heard of Mrs. Harms after she had left old Mr. Harms — that is, since eighteen or twenty years; I never heard anything from her."

Julius Harms, defendant, testified: "I have heard nothing from my former wife since the divorce (over objection by plaintiff). Anna Necker, the intervenor, told me that her mother was dead; that a report of her death had reached her; that she had died long since." On cross-examination he stated: "I never inquired as to my former wife in Galveston." The decree of divorce made no disposition of the property. Herman, a son of intervenor, had lived much of the time with defendant.

Other than the son of the intervenor, the defendant had no family after his wife left. The son was about twenty-three years of age at trial.

Judgment was rendered for plaintiff for half of the lot and for intervenor for the other half. Partition ordered. Plaintiff appealed, assigning errors:

1. Error in allowing witness Harris to testify to the statements of Mrs. Necker, the intervenor, as to the death of her mother, formerly the wife of said defendant.

2. Error in decreeing to intervenor one-half interest in the property sued for.

3. Error in not decreeing a, writ of possession to plaintiff.

*Jno. Ireland,* for plaintiff in error.

*Shook & Dittmar,* for defendants in error.

A. S. WALKER, J.— The record shows that the witness Harms was allowed to testify, over objections of the plaintiff, to the declarations of the intervenor touching the death of her mother. The bill of exceptions shows that the objections were carefully made and overruled.

The rule is, "if the declarant be living, he must be produced in court." 1 Wharton on Ev., sec. 215; Johns *v.* Northcutt, 49 Tex., 454, 455, and cases cited.

There was no other sufficient evidence of the death of Mrs. Lina Harms. No one who testified seemed to have taken any interest in ascertaining whether she was living or dead. The circumstances of her leaving home, and the cloud which no one wished to remove, resting upon her character, are reasons for her continued absence. There is no testimony showing the age she would be, to add to the mere lapse of time since she has been heard from. She is not shown to have left the country. Her last residence was at Galveston and she is not shown to have left that place. That no one has inquired may be sufficient reasons why no one had heard of her. It seems that something more should be shown than the *merest* negative testimony here given to raise the presumption of death from her absence from New Braunfels, her former residence. 2 Wharton on Ev., sec. 1274.

The title exhibited by plaintiff, under the testimony which was *properly* admitted, was sufficient to authorize a judgment for plaintiff. Harms had been in the possession of the lot since 1866; was *himself the family;* the grandson of his divorced wife formed no constituent part of his family.

Besides, the homestead right could not be set up in the second suit. The foreclosure decree was conclusive against whatever of right defendant had therein.

The wife who abandoned the husband without cause would not be entitled to homestead rights. Sears *v.* Sears, 45 Tex., 557; Newland *v.* Holland, 45 Tex., 588.

To assert rights as heir, the death of the ancestor was a necessary part in the intervenor's case. This, as was stated above, was not proven by admissible testimony.

As the remaining constituent of the *family*, it would seem that the husband could dispose of the entire interest in *the homestead;* the remainder, after his death, in the wife's community, to go to her heirs at his death.

For the error in admitting improper testimony as to the death of the ancestor of intervenor, the case should be reversed.

Attention is called to the general nature of the allegations as to the time of the death of the divorced wife; to the uncertainty in that respect of all the testimony; also, to the absence of testimony to the *status* of *the family* occupying or entitled to the statutory homestead. Under what probate act would the rights be determined; whether the surviving husband may not by survivorship have become sole owner, are matters which may arise. 17 Tex., 187; 44 Tex., 249; 47 Tex., 380, etc.

The judgment should be reversed.

REVERSED AND REMANDED.