"The writer, however, is unable to concur in this conclusion."

The fact that Armour & Co.'s servants were at work near the track cannot furnish a basis for a presumption that they placed the pipe on the track. It did not rest upon Armour & Co. to prove that their servants did not place the pipe there, but the burden was upon the railroad company. A presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. "No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based upon another presumption." 16 Cyc. 1051; Mo. Pac. Ry. Co. v. Porter, 73 Tex. 307, 11 S. W. 324. No fact or circumstance was proved in this case which justifies the presumption that the pipe was placed upon the track of the railroad by any person under the control of Armour & Co.

The trial court did not err in giving peremptory instructions to the jury to return a verdict for Armour & Co.

---

AMERICAN BONDING CO. OF BALTIMORE v. LOGAN. (No. 2361.)

(Supreme Court of Texas. May 6, 1914.)

1. COURTS (§ 247*)—QUESTIONS REVIEWABLE —CERTIFIED QUESTIONS TO SUPREME COURT.

A fact not disclosed by the statements and opinions of the Court of Civil Appeals certifying a question to the Supreme Court cannot be considered by the Supreme Court as a basis for its answer.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 749, 751–754, 757, 759, 760, 762–764; Dec. Dig. § 247.*]

2. HOMESTEAD (§ 134*)—EXEMPTIONS—CONSTITUTIONAL PROVISIONS.

The exemption provided for by Const. art. 16, § 50, declaring that the homestead of a family shall be protected from forced sale applies to the homestead while the head of the family is living, but furnishes no rule for its distribution after his death.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 245; Dec. Dig. § 134.*]

3. HOMESTEAD (§ 142*)—EXEMPTIONS—CONSTITUTIONAL PROVISIONS.

Const. art. 16, § 52, providing that on the death of a husband or wife, or both, the homestead shall descend as other real property of decedent, governed by the same laws of descent and distribution, determines the disposition of a homestead after the death of the owner, and determines the persons who shall take it and their respective interests, but not the conditions which may be imposed on the inheritance.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 271–280; Dec. Dig. § 142.*]

4. HOMESTEAD (§ 142*)—RIGHT OF HEIRS—EXEMPTIONS.

Under Const. art. 16, §§ 50, 52, protecting the homestead of a family from forced sale, and providing that, on the death of the husband, the homestead shall vest as other real property of decedent, and Rev. St. 1911, arts. 3235, 3422, 3427, 3785, 3786, declaring that on the death of a person intestate his estate shall vest immediately in his heirs at law, providing that on the insolvency of the estate on final settlement title of the widow and children to the property and allowances set apart to them shall be absolute, and that the homestead shall not be liable for the payment of debts, and declaring that the homestead of the family shall be exempt from forced sale for the payment of debts, the homestead of an insolvent vests, on his death, in his heirs in the proportions fixed by the general statute of descent and distribution, exempt from liability for debts, and the proceeds of a voluntary sale thereof by the heirs are also free from all debts, though the probate court failed to set aside the homestead for the benefit of the members of the family, entitled to the benefit of the property under article 3413, notwithstanding article 3787, providing that the proceeds of a voluntary sale of the homestead shall not be subject to garnishment or forced sale within six months after the sale, and the homestead rights of an unmarried daughter forming part of the family of decedent may not be off set against the surety's liability on the bond of her deceased father, given as her guardian.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 271–280; Dec. Dig. § 142.*]

Certified Questions from Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Jessie Logan against the American Bonding Company of Baltimore. There was a judgment for plaintiff, and defendant appealed to the Court of Civil Appeals, and it certified a question to the Supreme Court. Question answered in the negative.

Meador, Davis & Senter, of Dallas, for appellant. Wood & Wood, of Dallas, for appellee.

HAWKINS, J. The following statement and certified question are from the Court of Civil Appeals for the Fifth Supreme Judicial District, at Dallas:

"This suit was instituted by Jessie Logan, a feme sole, on June 3, 1910, against the American Bonding Company of Baltimore, to recover the sum of $1,000.00, with interest and costs of suit. The basis of the suit is that the said company was surety on the bond of W. J. Logan, as guardian of the plaintiff, Jesse Logan; that after the execution of said bond the said guardian, as such, collected the sum of $1,000 belonging to his ward, Jessie Logan, and died May 3, 1908, without having turned over said sum to her, and without having accounted to her in any way for the same or any part thereof; that by reason of the premises the said surety, the American Bonding Company, became liable to plaintiff for said sum of money, with interest. The defendant pleaded a general denial, and specially that W. J. Logan, plaintiff's father and guardian, owned and occupied certain real estate situated in the city of Dallas as a homestead; that after his death, and under and by agreement of his surviving widow and children, said property was sold, and from the sale of the same the plaintiff, Jessie Logan, received December 1, 1909, sums of money aggregating

$2,124.50; that, defendant being surety on the bond of W. J. Logan, as guardian of Jessie Logan, and W. J. Logan being dead, it was entitled to an offset against its liability on said bond to the extent of the amount received by Jessie Logan from the estate of her guardian. The prayer of the answer was that in the event the court should conclude plaintiff was entitled to judgment against defendant for any amount, that such amount be credited with whatever amount plaintiff received from the estate of her said father and guardian. The case was tried by the court without the intervention of a jury on the following agreed statement of facts: 'W. J. Logan was, during the year 1900, and for many years prior thereto, a married man, and resided in Dallas county, Tex., and in the city of Dallas. Said W. J. Logan died in the city of Dallas on May 3, A. D. 1908. He was married twice. His first wife died during the first part of the year 1900 in the city of Dallas. He had two children only by his first wife, to wit: Jessie Logan, the plaintiff in this suit, and John Logan, a male. At the time the wife died, Jessie, a girl, was about 15 years old, and John was about 13 years old. At the time of the death of the said mother of Jessie and John Logan, she left to her two said children two insurance policies on her life, each for the sum of $1,000. Each of these policies was payable jointly to the said children. After the death of the mother of Jessie and John, their father, W. J. Logan, was shortly thereafter, and during the year 1900, on his application, appointed guardian of the estate of said two children by the county probate court of Dallas county, Tex., and on the 13th day of November, A. D. 1900, took the requisite guardian's oath, and entered into bond, as required by law, with the defendant, the American Bonding Company of Baltimore, a corporation, as surety; said bond was made payable to the county judge of Dallas county, was in the sum of $4,000, and was conditioned as required by law in such cases, and duly and legally approved by the then acting county judge of Dallas county, and filed with the clerk of said probate court. The said W. J. Logan continued as the guardian of the estate of Jessie and John until the death of said W. J. Logan, which was on May 3, 1908. On the 12th day of December, A. D. 1900, W. J. Logan, as guardian of said children, collected one of the said insurance policies, which was $1,000. On the 7th of February, A. D. 1901, said W. J. Logan collected the other policy, which was $1,000. One-half of the $2,000 collected on the policies belonged to Jessie Logan. The said W. J. Logan never at any time accounted to the probate court, or to Jessie Logan, for said $1,000 belonging to her or any part thereof. The guardianship was pending and unsettled at the time of the death of said W. J. Logan on May 3, A. D. 1908. The said W. J. Logan, by the exercise of the proper care, could

have loaned said $1,000 and kept it loaned at the rate of 8 per cent. per annum from January 1, A. D. 1902, until his death. The said Jessie Logan arrived at the age of 21 years during the latter part of the year 1906. She has never been married. The said Jessie Logan never received said $1,000 or any part thereof from her father, unless it be as hereinafter stated. The said W. J. Logan married the second time during the year 1905; his second wife, Mrs. Jennie Logan, is still living. The said W. J. Logan and his said second wife, during their marriage, adopted, according to the statutes of Texas, as a legal heir, one Dorothy Logan, a girl who was a minor at the time she was so adopted, and who is now a minor. At the time of the death of said W. J. Logan, his family consisted of himself, his said wife, Jennie, his daughter, Jessie, an unmarried daughter, John Logan, a boy, and Dorothy Logan, the adopted daughter. Soon after the death of W. J. Logan, and during the year 1908, R. H. Lee was by the county probate court of Dallas county, Tex., appointed administrator of the estate of said W. J. Logan, and he thereafter, within due time, qualified and gave bond as such administrator. The said W. J. Logan owed debts at the time of his death, and his estate was insolvent, and so adjudged by the probate court, and so recognized throughout the administration proceedings, but the value of the homestead exceeded the debts of the said W. J. Logan. The said W. J. Logan never after the said Jessie Logan arrived at the age of 21 years filed any account for final settlement of the guardianship matter, nor was the guardianship ever closed or settled during the lifetime of said W. J. Logan. No part of the $1,000 collected by the said W. J. Logan for plaintiff ever came into the possession of the said R. H. Lee, as administrator of the estate of W. J. Logan. The only property that came into the possession of R. H. Lee, as administrator of the estate of W. J. Logan, was the homestead of W. J. Logan and his family, and which was occupied by said W. J. Logan and his said family at the time of his death, and which has been occupied by his said family since the time of the death of the said W. J. Logan up to the time it was sold. The same is situated in the city of Dallas, and consists of adjoining lots, and was the resident homestead of said W. J. Logan and family at the time of his death. It was recognized by said administrator and by said probate court as the homestead of the family of W. J. Logan, and exempt from the payment of the debts of said W. J. Logan, because of its homestead character, except as to taxes; but it is not agreed that the interest that plaintiff, Jessie Logan, had in said homestead by inheritance from her father, W. J. Logan, or the proceeds that she received from a sale of said homestead cannot be set off against the claim sued on in this case; that is a question of law we refer to the

court for settlement. The said homestead was sold in December, 1909, for the sum of $10,500, and it was, in fact, worth that sum when sold, and was worth about $8,000 when W. J. Logan died; the administrator, Mrs. Jennie Logan, Mrs. Jennie Logan, as guardian for Dorothy Logan, a minor, John Logan, and Jessie Logan, joining in the deed of conveyance. The said Jessie Logan received about $2,100 in December, 1909, of the purchase money. Upon this state of facts the court concluded that the plaintiff, Jessie Logan, was entitled to recover of the defendant the sum of $1,000, with interest thereon at the rate of 10 per cent. per annum from the 1st day of January, A. D. 1902, until the 3d day of May, 1908, and 6 per cent. per annum from May 3, 1908; that plaintiff received out of the proceeds of the sale of the homestead in December, 1909, $2,100, but that the same was not a lawful offset against the amount plaintiff was entitled to recover, because the estate of W. J. Logan at the time of his death was insolvent, and plaintiff, being an unmarried daughter and constituent member of the family, residing on said homestead, up to the date of the sale of the same, took the amount received by her free from the debts of her father.'

"At a former day of the present term a majority of this court held that there was no error in the conclusions and judgment of the lower court; that the defendant, under the facts stated, was not entitled to offset its liability on the guardian's bond with any portion of the amount received by the plaintiff from her father's estate. To these conclusions Mr. Justice Bookhout dissented, and held to the view that under the facts stated, that appellant, The American Bonding Company of Baltimore, as surety on the bond of W. J. Logan, deceased, as guardian of the appellee, Jessie Logan, was entitled to set off the amount of the judgment obtained by the said Jessie Logan against it by the $2,-100 received by her from the estate of her father, and that appellant's first assignment of error should be sustained. The case is now pending before us on appellant's motion for a rehearing and a motion to certify the point of dissent, in the event a rehearing is denied, is also pending. We therefore deem it advisable to certify the question set out below to the honorable Supreme Court of Texas for adjudication:

"Question: Was the appellant, under the facts stated, entitled to offset its liability on the guardian's bond with the amount of $2,-100, or any portion thereof, received by the appellee, Jessie Logan, from the estate of her father in the manner shown?"

The conflicting opinions from the Court of Civil Appeals in this case, referred to in its certificate, were sent up with it, but need not be set out here.

Said majority opinion, by Associate Justice Talbot, cites, in its support, the following authorities: Sayles' Statutes (R. S. 1895) arts. 1869, 2055, 2060, 2061; Scott v. Cunningham, 60 Tex. 566; Reeves v. Petty, 44 Tex. 249; Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485; Childers v. Henderson & Co., 76 Tex. 664, 13 S. W. 481; Lacy v. Lockett, 82 Tex. 190, 17 S. W. 916; Cameron v. Morris, 83 Tex. 14, 18 S. W. 422; Roots v. Robertson, 93 Tex. 365, 55 S. W. 308; Ford v. Sims, 93 Tex. 586, 57 S. W. 20; Krueger v. Wolf, 12 Tex. Civ. App. 167, 33 S. W. 663; Sossaman v. Powell, 21 Tex. 664; Griffie v. Maxey, 58 Tex. 210.

In dissenting, Associate Justice Bookhout cites Givens v. Hudson, 64 Tex. 471; Roots v. Robertson, 93 Tex. 365, 55 S. W. 308; Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485; American Bonding Co. v. Logan, 132 S. W. 897; Ashe v. Yungst, 65 Tex. 631; Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; Wilson v. Helms, 59 Tex. 680; Fagan v. McWhirter, 71 Tex. 567, 9 S. W. 677.

This certified question, under the facts, involves no issue relating to purchase money, taxes, or improvements, or to partition, or to abandonment, or to rights of creditors where none of the heirs is a widow, or a minor child, or an unmarried daughter remaining with the decedent's family, or where some of the heirs are, and others are not, such members of such family, or to the right of a surviving spouse to sell the homestead property for the purpose of paying community debts, or to the right of such spouse to appropriate it at a fair valuation, or sell it, or have it sold, or set apart to him or her, upon an accounting in community, for the purpose of reimbursing such spouse for separate funds expended in payment of community debts, or to rights of heirs as among themselves.

[1] We call special attention to these facts: When W. J. Logan died, he resided on said homestead property, and had so resided thereon continuously since prior to the death of his first wife. Their two children, Jessie and John, had lived with him thereon since prior to the death of their mother. W. J. Logan's second wife and their adopted daughter, Dorothy, who was a minor, were also living with him on said homestead when he died, and thereafter the stepmother, Jessie, John, and Dorothy all continued to live together thereon until it was voluntarily sold. Jessie, appellee, reached the age of 21 years before her father died, but she never married. prior to said sale. John was a minor when his father died—a fact which is not disclosed by said statement and opinions from the Court of Civil Appeals, and therefore cannot be considered by us as a basis for our answer to the certified question, but which is shown by the findings of fact approved by that court in the case of American Bonding Company v. John A. Logan, which is reported in 132 S. W. 895, but did not reach this court.

The estate of W. J. Logan was insolvent, and it was so adjudged by the probate court.

Said homestead property was recognized by that court and by the administrator as the homestead of his said family, and as exempt from liability for his debts, but was not expressly set apart by said court to said members of his family for their use and benefit. Some of these facts are not vitally essential, but they are all illuminating.

For convenience in expression, we treat the facts of this case upon the assumption that the homestead property was separate property of W. J. Logan; but, if it was community property of his first marriage, that fact is immaterial here in so far as the first wife's half interest in the property is concerned, because appellant's claim had its inception after the date of her death.

We doubt if the principles fixed by our Constitution and statutes relating to homestead exemptions, which must control our answer, can possibly be stated more plainly or forcibly than they have been stated heretofore in numerous opinions of this court, through long years; but reference to the provisions out of which those decisive principles grow and a brief review of some of those decisions may help to bring those principles into bolder perspective, as applied to the material facts of this case, and so assist in setting at rest the issues upon which the Court of Civil Appeals divided.

Every Constitution of Texas has contained provision, more or less general, against the forced sale of the homestead of a family.

[2, 3] Section 50 of article 16 of our present Constitution declares that "the homestead of a family shall be, and is hereby, protected from forced sale," with certain exceptions which are immaterial here. Discussing its effect, this court said, in Roots v. Robertson, 93 Tex. 371, 55 S. W. 309: "The exemption expressed in section 50 applies to property while the head of the family is living, but furnishes no rule for its disposition after his death. Givens v. Hudson, 64 Tex. 473; Zwernemann v. Von Rosenberg, 76 Tex. 525 [13 S. W. 485]." See, also, Ford v. Sims, 93 Tex. 589, 57 S. W. 20. Section 52 of said article 16 provides that: "On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution." That provision was inserted in our Constitution after this court decided, in Horn v. Arnold, 52 Tex. 161, that, under the Probate Act of 1848, which was adopted under a former Constitution, in insolvent estates the widow and minor children took an absolute title to the homestead, to the exclusion of the adult heirs; and, as this court has repeatedly suggested, said provision probably was intended to prevent a reenactment of the statutes on which that decision was based. Zwernemann v. Von Rosenberg, 76 Tex. 525, 13 S. W. 486; Roots v. Robertson, 93 Tex. 371, 55 S. W. 309; Ford v. Sims, 93 Tex. 591, 57 S. W. 21.

In each of those cases this court said: "In the previous Constitution of the state the disposition of the homestead after the death of the owner was left wholly to the wisdom of the Legislature. It is so also in the present Constitution, except as to the manner of its descent and the use reserved to the survivng spouse and the minor children." And in the first and in the last of those cases this court said also: "The language 'shall descend and vest as other property of the deceased' was employed, we think, to determine the persons who should take and their respective interests, but not the conditions which were to be imposed upon the inheritance. It was not, in our opinion, intended that the homestead should descend charged with the payment of debts as other property." That idea is developed in the next succeeding clause of said section 52, which is, "and shall be governed by the same laws of descent and distribution." See, also, Cameron v. Morris, 83 Tex. 14, 18 S. W. 422.

Thus we are pointed to our statutes relating to homestead exemptions, and also to those relating to administration of estates of decedents, in connection with which they must be construed. As to their meaning and effect as applied to the issues now before us, no difference of opinion in this court has been manifested, so far as we are aware. We find none in the cases cited by the Court of Civil Appeals or in the briefs of the parties in this case.

It is true that in Zwernemann v. Von Rosenberg, 76 Tex. 523, 13 S. W. 485, which arose under our present Constitution and statutes bearing on the subject, Chief Justice Stayton, in a forcible dissenting opinion, held that, although certain minor children of both decedents took their inherited shares in the homestead property exempt from debts of the ancestor, the adult heirs (other than an "unmarried daughter remaining with the family of the deceased") were not so favored, under our laws, but took their inherited shares in said property subject to such debts; but that point, upon which, alone, Judge Stayton's dissent was based, is not involved in this case; so even his holding thereon is not in conflict with the answer which we make herein to said certified question. The meaning of said statutory provisions and their bearing and effect upon the questions involved in the case at bar are well worked out and illustrated in the majority opinion of this court in said Zwernemann Case, in which then Associate Justice Gaines (afterward Chief Justice) voiced the views of the majority. Among the conclusions stated therein were these, in substance: Prior to the present Constitution the Legislature had steadily pursued the policy of exempting from sale under administration, for payment of debts, such property of decedent as had been exempt from forced sale during his lifetime. By act of January 9, 1843, such exemption embraced "the same amount of property and the same kind—if

so much belong to the estate in kind—that is exempt from sale under fieri facias or execution." Pasch. Dig. art. 1061. The scope of that exemption was enlarged by the act of May 11, 1846, which provided that, if there was not found among the decedent's effects all of the specific articles which were exempt under the Constitution and laws, the Chief Justice should order a sale of sufficient other property to purchase such articles for use of the widow and children. Pasch. Dig. art. 1107. Their rights were still further somewhat enlarged by the act of March 20, 1848 (Pasch. Dig. art. 1305), and under it this court held that, where the estate was insolvent, the widow and children took an absolute title to the property set apart to them. Green v. Crow, 17 Tex. 180. See, also, Reeves v. Petty, 44 Tex. 254; Horn v. Arnold, 52 Tex. 164.

In Scott 'v. Cunningham, 60 Tex. 566, the act of August 15, 1870 (Pasch. Dig. art. 5487), which provided that "the property reserved from forced sale by the Constitution and laws of this state, or its value, if there be no such property, does not form any part of the estate of a deceased person, where a constituent of the family survives," was construed in harmony with the construction which had uniformly been given to said earlier laws on that subject. Said act of 1870 was in force when our present Constitution took effect, and, as it was not repugnant to that instrument, remained in force until supplanted by later statutes.

[4] Under none of said statutes, down to and including said act of 1870, was such exempt property subject to sale for payment of debts, under order of the probate court, in case a constituent of decedent's family survived him, and such was also the effect of the statutes under which the Zwernemann Case arose. Old article 2335, now article 3785 (2395) (2335), provided: "The following property shall be reserved to every family, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: The homestead of the family," etc. Act April 15, 1870; Act April 23, 1874; Paschal's Dig. arts. 6003, 6834. The homestead was defined by old article 2336, now article 3786 (2396) (2336).

The constituents of the family for whose use and benefit R. S. art. 1993, now article 3413 (2046) (1993), made it the duty of the probate court, at a certain defined juncture, to set the homestead "apart" were "the widow and minor children and unmarried daughters remaining with the family of the deceased." R. S. old art. 2002, now article 3422 (2055) (2002), provided that in the event of final insolvency of the estate "the title of the widow and children to all the property and allowances set apart or paid to them, under the provisions of this and of the preceding chapter, shall be absolute, and shall not be taken for any debts of the estate, ex-

cept as herein after provided," the references being to R. S. old articles 2007 and 2008, relating to classes of debts not material to this inquiry.

Under a literal interpretation of said article 2002, the property, in case of such insolvency, would descend absolutely to such widow, minor children, and unmarried daughters to the exclusion of other adult children, but nevertheless free from claims of creditors of the decedent. However, such literal construction would bring said statute into conflict with said section 52 of article 16 of the Constitution, which was designed to prevent that very result and to require, in effect, that, as the homestead was thus free from all claims of the decedent's creditors, it should pass to those who would be entitled to it, under the general statute of descent and distribution, were it not homestead, and were there no creditors of the decedent; consequently said article 2002 cannot be held to so exclude heirs other than such widow, minor children, and unmarried daughter remaining with the family from inheriting the property as other heirs.

The leading object of the Legislature, in dealing with the subject, was to provide that exempt property be not subject to sale by order of the probate court for payment of debts generally, in the event either husband or wife or a minor child, or an unmarried daughter remaining with the family of the deceased owner, survive him. That object is manifested by other portions of our statutes relating to administration of estates of decedents. Old article 1817, now article 3235 (1869) (1817), originally adopted August 9, 1876, provides that, when a person dies, all his estate not devised or bequeathed shall vest in his heirs, but all of it, "except such as may be exempted by law from the payment of debts shall still be liable and subject in their hands to the payment of debts" of such former owner. Old article 2007, now article 3427 (2060) (2007), following section 50 of article 16 of the Constitution, exempts the homestead from all debts of the estate, except for purchase money, taxes, and improvements, and is to be construed with, and as limited by, said article 2002, which does not apply to any homestead other than that of a decedent who leaves surviving a widow, or a minor child, or an unmarried daughter remaining with the family. In support of that construction Givens v. Hudson, 64 Tex. 471, is cited by Judge Gaines. Effect will therefore be given to such leading purpose of the Legislature in enacting said article 2002, and to such portion of that article as is so found to be not repugnant to the Constitution.

From the concluding portion of that opinion by Judge Gaines we make this excerpt: "The provisions we have quoted clearly show, we think, that it was the legislative intent to utterly exempt the homestead from the claims of the general creditors of the estate,

provided a constituent of the family survived the decedent, and, in case the estate was insolvent, to remove it beyond the pale of administration. This is in accordance with all previous legislation, and is not repugnant to the Constitution. * * * The homestead should be held exempt from the payment of debts and to descend, not as prescribed in article 2002, but as provided in the Constitution." That decision by the majority of this court was reached upon careful study of the issues involved, and, in part, in opposition to the matured views of Judge Stayton; it has been followed by this court; the material statutes under which it was rendered have not been changed; and to that decision we adhere. Its correctness upon the principal point in the case before us is recognized in the following cases: Childers v. Henderson, Adm'r, 76 Tex. 664, 13 S. W. 481; Lacy v. Lockett, 82 Tex. 190, 17 S. W. 916; Cameron v. Morris, 83 Tex. 14, 18 S. W. 422; Roots v. Robertson, Adm'r, 93 Tex. 372, 55 S. W. 308. We consider it decisive of the case at bar, at least to the extent that the homestead property passed to the heirs of W. J. Logan free of all claims of his creditors, and so remained until it was voluntarily sold.

Clearly mere failure of the probate court to set the homestead apart for the use and benefit of said members of his family divested said heirs of no constitutional or statutory right, and conferred no right whatever upon appellant. Sossaman v. Powell, 21 Tex. 664; Griffie v. Maxey, 58 Tex. 213. And, since appellant never had or acquired any character of interest in or claim upon said homestead property, appellant was not in any manner or to any extent concerned in said sale of the property or in the disposition by appellee of her share of the proceeds.

We are convinced that careful consideration of the cases cited in said opinions from the Court of Civil Appeals, if given in the light of the immediately material facts of each case, will surely dispel what may, at first blush, erroneously appear to be serious conflicts among those decisions.

For instance, in the Givens Case, in which no dissent was expressed, the opinion shows that Smith's heirs who claimed his homestead property as exempt were all adults when he died, and none of them was his widow or minor child or unmarried daughter remaining with his family; and that, as a consequence, it was held that his homestead passed to his heirs subject to the claims of his creditors.

As we have already indicated, the Zwernemann Case, like the case at bar, involved essentially different facts, in that the decedent left surviving him several such constituents of his family, who, as we have seen, had a right to demand that the homestead property be set apart to them, for their use and benefit, as exempt And in every consideration of the Givens Case it should be remembered

that the decision therein was cited approvingly by Judge Gaines in the Zwernemann Case in support of the exemption which was sustained in the latter case. However, it must be conceded that Judge Stayton's reasoning in the Givens Case would deny to all the heirs of a decedent, except such surviving constituents of his family, as are enumerated in said old article 1993, all benefits growing out of or resulting from the fact that the homestead was exempt down to the time of his death. It must also be admitted that in his opinion in the Givens Case and in his dissenting opinion in the Zwernemann Case Judge Stayton presented that theory of construction with some force, and that he adhered to those views tenaciously, as shown by his dissents in Childers v. Henderson, supra, and in Lacy v. Lockett, supra. But in the Zwernemann Case the majority of this court refused to follow him, as we have seen, and distinctly held that where Brau's widow and children, some being minors and some adult males, continued after Brau's death to reside upon the homestead property until the widow died, and thereafter some of said minors continuously so occupied it, although without any order of court permitting them to do so, and Brau's estate was insolvent, his homestead property was not liable for his debts, but descended to and vested in his heirs, including, alike, his minor children, who were, and his adult sons, who were not, among the three favored classes so designated by said old article 1993, thus holding that the exemption in favor of such constituents of the family operated, under the statutes, to relieve the inherited interests of all the other heirs, though they were adults, of all liability for debts of the decedent.

Applying here so much of said principles as are applicable, and inasmuch as Jessie Logan, at date of her father's death and down to said voluntary sale of the homestead property, was an unmarried daughter remaining with his family thereon (to say nothing of any exemptions for the use and benefit of the widow, the son and the adopted daughter), the facts of the case at bar bring it within the rule so announced by Judge Gaines, yet not in conflict with the rule so insisted upon by Judge Stayton, in the Zwernemann Case.

Again, in the Root Case, the decedent, Putnam, left surviving him no widow or minor children or unmarried daughter remaining with the family to whom his homestead property could have been set apart by the probate court; consequently that case falls within the decision in the Givens Case, and not within, nor yet in conflict with, the majority decision in the Zwernemann Case.

The original decision of the majority of the Court of Civil Appeals in this case is not in conflict with the decision of this court in any of the cases which we have thus briefly reviewed, and as we have seen, is not

even in conflict with said views of Judge Stayton, as expressed by him in the Givens Case and in the Zwernemann Case; while none of them goes to the extent of supporting said dissenting opinion of Associate Justice Bookhout.

We are unable to perceive that the cases cited by him in support of the right of a community survivor to sell the homestead without consent of the heirs of the deceased spouse, to pay community debts, or to reimburse such survivor for his separate funds paid out on community debts, have any material bearing upon said certified question, inasmuch as that right of such community survivor rests upon other statutes, and is one with which creditors of the decedent cannot legally interfere, and, in this instance, was one with which such creditors had no concern whatever, in contemplation of law.

Attorneys for appellant have referred to R. S. 1911, art. 3787, which provides that "the proceeds of the voluntary sale of the homestead shall not be subject to garnishment or forced sale within six months after such sale" (Acts 1897, p. 131); but we think it has no bearing upon the questions before us.

We are therefore of the opinion that, under our Constitution and statutes and decisions, and the facts and circumstances of this case, the homestead property, upon the death of W. J. Logan, descended to and vested in his heirs, in the proportions fixed by our general statute of descent and distribution, exempt from liability for his debts, and absolutely free from any and all claims of any of his creditors; and all proceeds of the voluntary sale of said property by said heirs were likewise free from any and all such claims, even though the probate court had failed to formally and expressly set said homestead apart for the use and benefit of such constituent members of his family as were entitled to the entry of such order and to such use and benefit of said property, under R. S. 1911, art. 3413 (2046) (1993), and even though there had been no final settlement of his estate disclosing its final insolvency.

We accordingly answer said certified question negatively.