LIZZIE GRIFFIE ET AL. v. ELIZABETH MAXEY ET AL

(Case No. 1295.)

1. CASE REAFFIRMED.— Sossaman v. Powell, 21 Tex., 664, holding that the homestead vests in the heirs with or without administration, and whether it be or be not set apart by the chief justice of the county court, approved.

2. CASES APPROVED.— Clements v. Lacy, 51 Tex., 150, and Williams v. Wethered, 37 Tex., 132, approved.

3. PARTNERSHIP.— The fact that a conveyance of land is made to parties who are partners, and that it may be used after being thus conveyed for partnership purposes, does not necessarily impress on it the character of partnership property.

4. HOMESTEAD.— Though a lien given upon real estate by trust deed, for a debt which could not, under the constitution, be enforced by sale of the homestead, cannot be divested during the life of the debtor by subsequent occupancy of the property as a homestead, yet upon his death, during such occupancy, the property, to the extent . of the interest owned when the deed was executed, is discharged from the lien and exempt from forced sale under it.

5. SAME.— Persons who contract under such circumstances cannot complain, for they do so with knowledge of the fact that the death of the debtor may destroy the lien.

6. SAME.— Where there is no homestead in fact, property upon which liens have been given may be sold to raise a reasonable allowance in lieu thereof, unless the lien "has been given by the husband and wife, acknowledged in a manner legally binding to secure creditors," or the lien has been given for the purchase money of . the property.

7. HOMESTEAD.— A deed of trust was executed by two persons to secure a debt for . which both were bound. The land conveyed was, at the time of the execution of the trust deed, owned jointly by the debtors. ° Afterwards, one purchased the interest of the other, and died, when his widow claimed homestead rights in the entire property. *Held*,

   (1) That such rights attached only to the interest owned by her deceased husband at the time when the trust deed was executed.

   (2) Improvements made by the deceased party with the separate funds of his wife upon the property, entitled her to protection *pro tanto*.

   (3) All the children of the deceased party were necessary parties to an action by the creditor seeking an enforcement of the trust on the property.

   (4) In effecting partition between the creditor and the wife of the deceased party claiming homestead rights, the property should be divided into two equal parts, if it can be done without reference to increased value created by improvements made with the wife's separate money. If this can not be done, then that part on which her dwelling house stands should be set aside to her and the children of the deceased husband, without prejudice to the rights of herself and children thereafter to adjust their respective rights therein, and the other half should be subjected to sale through the probate court to satisfy the debt.

APPEAL from Johnson. Tried below before the Hon. Jo Abbott.

Suit brought by appellees against Lizzie Griffie, administratrix, Hattie Griffie and Alva Griffie, the first named being the surviving widow and administratrix of the estate of John Griffie, deceased, and the two latter his minor children, to establish title to and recover possession of an undivided half interest in lot 1, in block 38, in the town of Cleburne; for partition and damages, and to establish two claims for money secured by deed of trust, as valid claims against the estate, and liens on the other half of that lot, or in the alternative to establish them as liens against the whole of the lot.

The petition alleged that, in the spring of 1877, John Griffie and his brother, Elijah Griffie, were partners in brewing lager beer, and as such owned and used for that purpose the lot above described; that while thus engaged, John Griffie, on April 24, 1877, borrowed

from appellee $200, for which he gave his own note, "signing his own name and that of his partner, Elijah Griffie, thereto;" that to secure its payment, John Griffie executed and delivered in the name of himself and partner, his deed of trust, with power of sale in default of payment, to G. H. Maxey; that John Griffie, for and in consideration of $300 paid to him on the 26th of September, 1877, executed his promissory note to plaintiff for that amount, also with deed of trust on the property, and power of sale in default of payment; that Elijah Griffie, on February 27, 1878, conveyed all of his interest in the property to John Griffie; that John Griffie was married to Lizzie Griffie in the summer of 1877, and died on the 29th day of November, 1878; that Mrs. Lizzie Griffie was appointed administratrix of his estate in May, 1878; that the partnership was insolvent. It also alleged that in "the spring" of 1880, the first note being due, after due notice of sale, the trustee sold all of Elijah Griffie's interest in the lot, and became the purchaser; that defendant was in possession of the premises, appropriating them, but living elsewhere, and insolvent; that money was still due on the debts; praying to establish both claims as debts against the estate, for a foreclosure of the trust deed lien, an adjudication of the homestead right claimed, general relief, etc.

Defendant Lizzie Griffie answered with a general denial, plea of not guilty, and special answer alleging that the lot was the homestead of John Griffie and his family when the notes and deeds of trust sued on were given, and at the time of his death; that it was still the homestead of herself and minor children, and had been set apart to them as such by the county court of Johnson county, and a plea of improvements made in good faith, without any notice of said claims, and with money which was her separate property, amounting to $720. D. T. Bledsoe, Esq., was appointed by the court guardian *ad litem* for the minor, Alva Griffie, and filed answer adopting the answer of defendant, Lizzie Griffie. The cause was called for trial on the 23d of May, 1882, when plaintiffs dismissed as to the minor defendant, Hattie Griffie, and the cause was submitted to the court. Judgment rendered in favor of plaintiffs against Lizzie Griffie, as administratrix of the estate of John Griffie, deceased, for $272.45, and foreclosing the mortgage lien on the lot to satisfy the debt.

The deed from Guiple to the lot in controversy showed that the same was conveyed to Elijah Griffie and John Griffie on the 10th day of April, 1875; that it was paid for by a conveyance from Elijah Griffie to Guiple of another lot of land and a joint and several

promissory note signed by Elijah Griffie and John Griffie. The testimony of D. T. Bledsoe showed that the firm name was at first Griffie Bros., and afterwards Griffie & Griffie. The deed from Elijah Griffie to John Griffie would seem to show that the parties did not consider or treat the lot of land as partnership property between themselves. It was admitted that an old building on the lot, known as the Cleburne brewery, was built by Guiple, the vendor of Elijah and John Griffie, for a brewery, and that it was used and occupied by Griffie & Griffie, during the existence of the partnership, as a place to brew and sell beer, which was the only business of the partnership.

The testimony of all of the witnesses showed that Lizzie Griffie and John Griffie were married in January, 1876; that John Griffie was continuously engaged in the business of brewing and selling beer on the lot from that time until his death; that he was not engaged in any other business; that he did not during that time own any other lot of land, or interest in land, in the city of Cleburne, and that up to the spring of 1878 he lived in a rented house immediately across the street from the lot.

The inventory and appraisement read in evidence showed that John Griffie owned no property at the time of his death except the lot in controversy, a small amount of personal property, all of which was exempt from execution, and a possible interest in some land in Falls county, in litigation, which was appraised at $250. Mrs. Lizzie Griffie testified that John Griffie, with his family, moved on the lot in the spring of 1878, and continued to live on it as their homestead until his death, and that she and the minor children continued to live on it after his death; that John Griffie did not own any other land in Cleburne, and that the lot was her homestead, and she has no other. Her statement was corroborated by the testimony of B. L. Durham.

*D. T. Bledsoe* and *F. A. Fisher*, for appellants.

*M. A. Otis* and *C. W. Jordan*, for appellees.

STAYTON, ASSOCIATE JUSTICE.— The action of the court in excluding the decree of the probate court, setting aside the property in controversy to Mrs. Griffie and her children as homestead, is unimportant, as their rights in this regard do not depend upon the action of the probate court, if the property was homestead in fact at the time of the death of John Griffie. Sossaman *v.* Powell, 21 Tex., 664.

Nor is it important whether the property was owned by John Griffie and Elijah Griffie as partners, at the time the trust deed for the benefit of Mrs. Maxey was executed, or not, for prior to the death of John Griffie, he had acquired the title and interest of Elijah Griffie, who alone, if any one, could object to the appropriation of the interest therein of John Griffie to homestead uses by him. Clements v. Lacy, 51 Tex., 150; Williams v. Wethered, 37 Tex., 132. It does not, however, appear that the court found that the property in controversy was partnership property. This would not necessarily result from the fact that the property was bought by the two, and was used at one time for partnership purposes. Freeman on Cotenancy, 114.

It is not necessary for us to determine whether the use of the property by John Griffie as his place of business, before and at the time the deed of trust in favor of Mrs. Maxey was executed, he with his family living in rented premises, impressed upon the property a homestead character; for it is certainly true that the execution of the trust deed did not prevent him from appropriating his interest in the property to homestead purposes.

But while this is true, had he lived, such use of the property could not have divested the lien given by him; upon his death, however, the property, to the extent of the interest which he owned at the time the trust deed was executed, the same having become in fact his homestead, was discharged of the lien, and his family were entitled to hold it freed from the claims of all creditors, his estate being insolvent. Reeves v. Petty, 44 Tex., 250; McLane v. Paschal, 44 Tex., 366.

It matters not what the lien may be, unless it be such as under the constitution may be enforced by the sale of the homestead, upon the death of the head of the family, it must give way to the homestead exemption.

Persons in taking liens contract with reference to this fact, and cannot complain if the event occurs which they might have foreseen would defeat the lien.

Where there is no homestead in fact, property upon which liens have been given may be sold to raise a reasonable allowance in lieu thereof, unless the lien "has been given by the husband and wife, acknowledged in a manner legally binding to secure creditors," or unless the lien be for the purchase money of the property. R. S., 2000.

Hence the court erred in adjudging that one-half of the property, which, in the absence of evidence to the contrary, will be presumed

to have been the interest of John Griffie in the property at the time the trust deed was executed, was subject to forced sale for the payment of the debt due to Mrs. Maxey. Freeman on Cotenancy, 105.

The next inquiry which arises is, could John Griffie, by purchasing the interest of Elijah Griffie after the execution of the deed of trust (the due execution of which the appellants, under the facts of this case, are estopped to deny), impose upon that interest the homestead character, so as to defeat the lien thereon by his death? We are of the opinion that this could not be done.

At the time the lien was given, the parties are held to have known, and to have contracted with reference thereto, that the lien might be defeated by the death of the party who gave the lien, in order to protect his family in the homestead, it becoming such, or by sale to raise the allowance in lieu thereof; but they did not contract with reference to the sale of the property by the person who gave the lien to some other person, and that the death of such person should divest the lien, to provide homestead or allowance in lieu thereof for his family.

Such not being the legal construction contemplated by the parties at the time the lien was created, the right to enforce the lien, to the extent it was given by Elijah Griffie, cannot thus be impaired or destroyed.

It appears with reasonable certainty, that, after Elijah Griffie sold his interest in the lot in controversy to John Griffie, he, with the separate funds of his wife, erected a dwelling house and other improvements on the lot.

To the extent that the separate funds of Mrs. Griffie were thus used, she is entitled to protection.

The cause was tried by the court, but there are not sufficient facts contained in the record to enable this court to render such a judgment as the district court should have rendered, had all the necessary parties been before the court.

The action was discontinued as to one of the children of John Griffie, not served, without whom a valid partition could not be made.

The judgment will be reversed and the cause remanded, with such instructions as will enable the court below, after the child of John Griffie is made a party defendant, to properly dispose of the case.

The property should be partitioned into two equal parts, if it can be done without reference to the increased value thereof on account of the improvements made with the separate funds of Mrs. Griffie,

and that part upon which the dwelling house stands should be set apart to Mrs. Griffie and the children of John Griffie, without prejudice to the right of Mrs. Griffie and the children hereafter to adjust their respective rights therein, and the other half of the property should be subjected to sale through the probate court for the satisfaction of the debt due to Mrs. Maxey.

If this cannot be done, the property should be sold and the proceeds so distributed as to give to Mrs. Griffie and the children one-half of the proceeds, after a reasonable allowance is made to Mrs. Griffie for the increased value of the lot by reason of the improvements made with her funds, and the remainder of the proceeds of sale, so far as may be necessary, should be applied to the payment of the debt of Mrs. Maxey.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 19, 1882.]