Delivered December 20, 1890.

---

BELLE HOFFMAN ET AL. v. T. M. HOFFMAN, JR., ET AL.

No. 2753.

**Community Property — Homestead and Other Exemptions.** — Hoffman, senior, died leaving children and a widow, the widow a second wife who had no children. The estate was largely indebted. During the second marriage about $150 in value of property was acquired. . At the death of the first wife no constituent of the family remained but the husband. The homestead was encumbered at the death of Hoffman, senior. The debt was paid by his administrator. The household goods were taken and divided by the children. The widow applied to the Probate Court for such allowances as she was entitled to. The Probate Court made an allowance in lieu of homestead and of other exempt property. On appeal to the District Court a judgment was rendered allowing the widow $1200 in lieu of homestead and $450 in lieu of other exempt property, to be paid only after the community debts of the first marriage were all paid, and out of the one-half of the surplus remaining. The widow appealed. *Held:*

1. Under the facts it was proper to make an allowance, and the amounts were not excessive.

2. One-half of the household goods on hand at her husband's death belonged to her without any order of court. If she permitted them to be taken by others it is her loss.

3. Deducting the half of the household furniture an allowance should be made in lieu of other exempt property. In making such allowance care must be taken that the interest of the children in their mother's share of the estate is not diminished thereby, either directly or indirectly.

4. Such allowance must be made from the estate of the deceased husband. If there is not enough the want can not be made up from the estate of his deceased wife inherited by her children.

5. The widow must have the full amount of such allowance if her husband's estate be sufficient. Her allowance has priority over creditors.

6. Creditors can not resort to the half of the excess of assets above the whole amount of indebtedness that went to the first wife's heirs for the purpose of making up their loss by reason of the widow having taken from them so much of the husband's share of the estate. To do this would be to make the estate of the first wife contribute indirectly to the second wife's allowances.

7. The residence of the deceased not being in a condition as to title to be treated as a homestead should be disposed of as other property.

8. Suggestions are given for adjusting the equities arising among the parties interested.

APPEAL from Kaufman.    Tried below before Hon. Anson Rainey.
A statement is given in the opinion.

*Marion & Huffmaster,* for appellants.—The one-half interest of T. M. Hoffman in all the community property of himself and his former deceased wife, C. A. Hoffman, was liable and subject to the allowances for his surviving widow, Belle Hoffman, and her claim was superior to creditors or heirs, and ought not to have been postponed or made subject to the claims of creditors or heirs by the court in its judgment.    Gilliam v. Null, 58 Texas., 298;  Presley's Heirs v. Robinson, 57 Texas., 453; Clements v. Lacy, 51 Texas, 150; Scott v. Cunningham, 60 Texas, 567, 568; Rev. Stats., art. 2003; Abney v. Pope, 52 Texas, 293; Runnels v. Runnels, 27 Texas, 522; Giddings v. Crosby, 24 Texas, 299; Robertson v. Paul, 16 Texas, 475; Terry v. Terry, 39 Texas, 313; Mayman v. Reviere, 47 Texas, 357; McLane v. Paschall, 47 Texas, 370; Rev. Stats., art. 1994; Pelham v. Murray, 64 Texas, 477; Chifflet v. Willis, 74 Texas, 245.

*Clark, Morrow & Gossett,* for appellees.—1.    Upon the death of either husband or wife their community property goes one-half to the children and the other half to the survivor; but in every case the community property passes charged with the debts against it.    Rev. Stats., art. 1654; Jones v. Jones, 15 Texas, 143; Johnson v. Harrison, 48 Texas, 267; Tiemann v. Robson, 52 Texas, 411; Redding v. Boyd, 64 Texas, 498; Const., 1876, art. 16, sec. 52; Ashe v. Youngst, 65 Texas, 631.

2.    Upon the death of either the husband or wife the homestead descends and vests, as other real property, in the rightful heir, but is not subject to partition so long as it is used by the survivor as a homestead. The homestead right, whether it be to the particular property or money in lieu thereof, is merely a use.    Const. 1876, art. 16, sec. 52; Pressly's Heirs v. Robinson, 57 Texas, 454; Ashe v. Yungst, 65 Texas, 631.

HENRY, ASSOCIATE JUSTICE.—T. M. Hoffman, Sr., was married to C. A. Hoffman.    They had a number of children, owned a community estate, including a residence homestead in the town of Kaufman, and owed community debts when the wife, C. A. Hoffman, died.

Shortly after his first wife's death T. M. Hoffman, Sr., married for his second wife Belle Hoffman, the appellant.

Before the debts contracted during the first marriage were paid T. M. Hoffman, Sr., died without having contracted any new debt, so far as the record shows, after his first wife's death.

During his second marriage he lived in the house occupied by him during his first one.

His youngest child by his first wife was, according to the evidence, a son aged "about" twenty-one years at the time of his father's death.    He

is not shown to have been then a member of his father's family.    T. M. Hoffman, Sr., had no child by his second marriage.    He acquired about $150 worth of personal property during his second marriage. · With the exception of that all of the property owned by him at his decease was acquired during and was community of his first marriage.

After his first wife's death he paid to one of her sons his interest in her estate, and received from him a release for it.    He made no settlement with her remaining children.

After the death of T. M. Hoffman, Sr., administration upon his estate was opened.    His children by his first wife took his household effects and divided them between themselves after the death of their father.

An encumbrance that existed upon the residence homestead was paid off by his administrator.

The evidence indicates that the property of the estate will not be sufficient to pay the debts and provide for allowances to the widow in lieu of exempt property without diminishing what the children would have received from their mother's half of the estate.

If the statutory exemptions and allowances are made to the widow, then either the creditors must receive less than is due them or the children must receive less from their mother's half of the estate or of their half of the remainder after the debts are paid, by reason of the allowances made to the second wife.

On the other hand, if the creditors are paid in full and the children of the first marriage are given their mother's half of what remains, it appears that there will not be enough left of the estate to make up the statutory allowances to the widow.

Belle Hoffman, the widow, made application to the County Court therefor, and that court made an order in her favor directing the administrator to pay to her out of the first money that came into his hands belonging to the estate the sum of $1250 in lieu of a homestead, and $450 in lieu of exempt property not on hand in kind.

The cause was carried to the District Court by a writ of certiorari, sued out by the children of the first wife, and upon a trial in that court the same amounts were allowed to the widow, to be paid, however, only after the community debts of the first marriage shall be all paid, and out of the one-half of the surplus remaining after the discharge of such debts.

The effect of the judgment of the County Court was to give to the widow's allowance precedence over both the creditors and the heirs of the first wife, without adjusting the claims of the latter as between themselves.

The result of the judgment of the District Court was to give the claims of the creditors precedence over both the widow's allowances and the heirs of the first wife, and as between the latter to postpone the widow in favor of the heirs.

The widow appeals from this judgment.

T. M. Hoffman, Sr., when he died left no unmarried daughter remaining with his family nor minor child, and hence there was no constituent of his family entitled to the homestead allowance or the other exemptions except his widow.

The title to the residence homestead was one-half in the children of Hoffman as heirs of their mother.

In that state of the case, and because there was no complete homestead that could be assigned to her, it was proper that an allowance should be made to the widow out of her husband's interest in the estate in lieu of a homestead. Clift v. Kaufman & Runge, 60 Texas, 64.

The one-half interest of T. M. Huffman, Sr., in the household goods that were on hand at the date of his death went by the statute to his widow as exempt property, without an order setting it apart to her.

Such one-half interest having become the widow's property upon the death of her husband, no allowance in lieu of it could be subsequently made to the detriment of the creditors.

As her husband's share of such property belonged to her from the time of his death, it was at her own risk, and if it was destroyed or taken from her by a trespasser she and not the creditors must bear its loss.

After deducting the husband's half of the household goods that were on hand at his death, it was the duty of the court to make to the widow an allowance out of her husband's interest in the estate in lieu of such articles of exempt personal property as were not found to exist in kind.

In making such allowance care must be taken that the interest of the children, who were not settled with by their father, in their mother's share of the estate is not diminished thereby, either directly or indirectly.

In the case of Redding v. Boyd, 64 Texas, 498, where the first wife had died leaving children, an estate, and community debts, and where the husband had married a second time and then died leaving a widow and an insolvent estate, this court, through Chief Justice Willie, speaking of the payments of debts contracted by the husband subsequent to the death of his wife, said that they were "not chargeable against the community interest of his first wife;" and referring to the interest of the first wife in the community estate he said, "it descended to her children subject only to the community debts of that marriage and expenses incurred in its preservation, safe keeping, and administration;" and with regard to the contention of the second wife or widow "that Chambers's estate being insolvent, the exemptions allowed by law to his widow of the second marriage and his children (by her) must come out of the community estate of himself and his first wife before the heirs of that wife can claim any portion of her community estate," he said: "This position is obviously incorrect. It is of no importance that there will not be left in the estate of Chambers, the husband, sufficient to pay an allowance in lieu of exempt property. That allowance must be raised from the estate of the de-

cedent.   If there is not enough in the estate to provide such an allowance for the widow and children, the 'balance can not be taken from another estate.   The community interest of the wife does not contribute towards it, though there be no children besides the heirs of. that interest; much less can it be taxed with an allowance to the widow and child of a subsequent marriage."   To the same effect is Gilliam v. Null, 58 Texas, 299; Pressly's Heirs v. Robinson, 57 Texas, 453; Putnam v. Young, 57 Texas, 461; King v. Gilleland, 60 Texas, 271.

The above quotations will serve to show beyond dispute that the interest of the children of the first marriage in their mother's share of the community property can not be made to contribute to the allowances of the widow of a second marriage.

It is equally true that the widow must have her full allowances for exempt property not existing in kind if the husband's interest in the estate is of sufficient value to satisfy them.

· The widow's right to her allowances has precedence over the creditors so far as her husband's interest in the estate will extend.   The whole amount of her allowances for exempt property must be paid before the creditors can receive any amount from her husband's share of the estate.

The widow can resort only to her husband's share of the community estate.   The children can resort, as against the widow's claim for exemptions and allowances, only to their mother's share.   The creditors may· resort to both shares, with the difference that as to the first wife's share their claims are superior to those of her heirs, while as to the husband's share they are inferior to the widow's right to the allowances.   The relative rights of the respective parties may be stated as follows:   When not affected by a subsequent marriage the claims of the creditors must be fully discharged before the. heirs of the first wife can receive anything. The widow must have her allowances for exempt property before the creditors can be paid anything out of her husband's share of the estate.

The interest of the heirs of the first wife in the estate must not be diminished to create or help to create an allowance for the widow or second wife.   Under these rules the· heirs of the first wife will take nothing when the amount of the indebtedness of the community, including the expenses of its administration, is greater than the entire value of the estate.

The creditors and the widow will each get something when there is any estate, although in each instance it may be less than their respective claims. When the value of the estate is greater than the indebtedness and expenses of administration combined, that result, in the case of the widow, can only be produced by the fact that her husband's entire interest in the estate does not amount to sufficient in value to satisfy her claim; and in the case of the creditors it will be produced solely by the fact that the whole or a part of the husband's share of the property is taken away from them for the benefit of the widow.   In such a case the creditors can not

resort to the half of the excess above the whole amount of indebtedness that went to the first wife's heirs for the purpose of making up their loss by reason of the widow having taken from them so much of the husband's share of the estate. To do that would be to make the estate of the first wife contribute indirectly to the second wife's allowances.

It is plain that in the case stated the only necessity for a resort to be made to the first wife's half of the property by the creditors is created by the allowances made to the second wife.

In every case where the value of the community estate of the husband and his first wife is greater than the debts and expenses, but at the same time less than the debts, expenses, and a second wife's allowances, either the children of the first wife must lose part of a property inherited by them from their mother, on account of allowances made to the widow of the husband's second marriage, or the creditors must receive less than their debts and less than they would have received except for the necessity of making such allowances.

We merely repeat when we say that the distinction is just what the law makes. The general rule in this State is that debts are created with the understanding and obligation that they exist in subordination to and shall yield in favor of the widow's allowances for exemptions. It is equally well settled that the estate of the first wife shall not be taxed directly or indirectly to provide such an allowance.

When the heirs of the first wife receive less of the community estate than they would have received if no allowance had been made to the widow of a second marriage, can it then be said that the first wife's estate has not been so taxed?

The correctness of these conclusions is not affected by the undisputed fact that when there is no widow of a second marriage the children of the first wife can not take and hold any of the estate so long as there remains an unpaid debt. There is no original right for the heirs of the first wife, simply as such, to take and hold a dollar's worth of her estate while there exists an unpaid debt. But the heirs of the mother will be found in rightful possession of some portion of her estate while there are still unsatisfied creditors when such unsatisfied creditors exist only because of and to the extent only that the community estate has been reduced by allowances made to the widow of the second marriage.

It may be necessary in some administrations, and it seems that it may become proper in this one, to ascertain the exact condition and valuation of the estate before a distribution of it can be made between the conflicting claimants.

While it will not probably become often necessary to postpone the payment of the allowances to the widow and minor children to ascertain what amount can be paid them, and while postponement of the payment of such allowances should never be made when it can be properly avoided,

still it should be done when necessary to ascertain the true condition of the estate in order to determine how much of the allowance can be lawfully paid.   In such cases even partial payments may be made, as it can be ascertained with certainty that any specified portion of the allowance may be lawfully paid.

For the purpose of ascertaining how to make as well as to actually make distribution, the land and other property belonging to the estate may be sold when the condition of the estate and the nature of the claims against it demand that remedy.   In this case the residence of the deceased not being in a condition as to the title to be treated as a homestead, it should be sold like other unexempted property.   The allowance made to the widow in lieu of a homestead becomes a substitute for the homestead.

When, by sales of the property and collections, the exact value of the estate shall have been ascertained, it can without difficulty be divided according to the rules above suggested.

In the first place, if there is an excess of value above the whole amount of debts and expenses of administration, allot to each of the heirs of the first wife who were not settled with by the husband his or her proportionate part of one-half of such excess.

In the second place, pay to the widow the full amount of her allowances if it can be done with the entire remainder of the estate.

And in the third place, pay the creditors out of what remains, according to their respective priorities.

If anything remains after the three classes are provided for, it must be distributed to the husband's heirs according to the statute of descent and distribution.

The foregoing general directions are subject to some qualifications in this case, and in others when the same or like conditions may exist.   When there is a lien creditor with rights superior to the claims of other parties, such rights will of course be enforced against the property subject thereto, and the surplus only, if any results, should be administered in the manner here suggested.

The small amount of community property that was acquired during the time of the second marriage, or its net proceeds, should be paid to the widow as part of her allowance, reducing the sum to be otherwise paid her by that amount.   One-half of the value of the household goods on hand at the death of the husband should be subtracted from the widow's allowance in lieu of exempt personal property, and the value thereof should be deducted proportionately from the shares of the heirs of the first wife who participated in taking away such property, and paid to the widow.

In estimating the debts of the estate for the purpose of arriving at the interest of the heirs of the first wife, no debt contracted subsequent to

her death should be considered except such as have been incurred in the preservation, settlement, and administration of the estate.

The judgment is reversed and the cause is remanded. ·

*Reversed and remanded.*

Delivered December 12, 1890.

STAYTON, Chief Justice, dissenting.—It is conceded that there is no homestead in fact belonging to the estate of the deceased husband that can be set apart to the surviving wife; that the widow is the only person entitled to the allowance in lieu of homestead and other exempt property, and it is not claimed that the sum allowed is excessive.

It is held that the widow is entitled to receive the sum thus allowed if it can be realized from the small community estate of her deceased husband and herself and from his share of the common estate of himself and his first wife; and so far there is concurrence of opinion.

It is held, however, that the children of the first wife are entitled to one-half the community estate of their mother and father after the payment of one-half of the debts with which that estate stands charged, and that this they must receive even though creditors of that estate be not paid because the residue of the estate, after taking out the allowance to the widow, may be insufficient for that purpose.

In this proposition there is not a concurrence of opinion, the writer believing that the right of the creditors of the estate of the husband and first wife to be paid in full is superior to the right of the children.

The rule is understood to be that the creditors of a deceased person's estates are entitled to payment of any sums due them if the estate be solvent, and in determining whether solvent, exempt property or an allowance in lieu thereof is not to be estimated as assets of the estate. Rev. Stats., art. 2003.

If an estate be insolvent—i. e., insufficient to pay the claims of creditors after taking out exempt property or allowance in lieu thereof for a widow or children—then creditors must suffer loss by reason of this insolvency; but it is not believed that there is any case in which heirs are entitled to hold as against creditors any part of an estate charged with the payment of their debts, though the necessity for thus consuming the estate grows out of the fact that it becomes necessary to make an allowance to a surviving widow.

The allowance which the law gives to a widow in lieu of exempt property is superior to that of creditors, who contract debts with a knowledge of the existence of the law declaring that in given conditions the allowance shall be made.

It is superior to the claims of heirs, who can take only what the law gives them.

The claims of creditors, however, are superior to the claims of heirs, be-

cause they are based on contract of the ancestor, and the law confers the estate on the heir subject to the payment of all just debts of the testator or intestate. Rev. Stats., art. 1817.

Nothing can be withdrawn from the claims of creditors which descends to heirs, except exempt property and allowances in lieu thereof under circumstances pointed out by the law.

The correctness of this general proposition will not be denied, but it is claimed that it is not applicable to a case like this.

That property which descends to an heir charged by law with the payment of debts of the ancestor, whether the estate be in severalty or in common, must be subjected to their payment, is believed to be universally true; and it necessarily follows that in all such cases the heir takes in subordination to the rights of creditors.

The debts involved in this case are such as were contracted by the deceased husband during the life of the first wife and while the marriage relation existed between them. On the death of the first wife one-half of the community estate vested in her children and the other half in her husband; but the law then declared that "in every case the community estate passes charged with the debts against it." Rev. Stats., art. 1645.

This has been the law in this State since the Act of March 13, 1848. It further declared that "the community property of the husband and wife, except such as is exempt from forced sale, *shall be liable for all the debts contracted during the marriage.*" Rev. Stats., art. 2164.

The children of the first marriage took one-half of the property with this charge upon it. The law declared the existence of this charge; the creditors are not shown to have done any act that would release it, and if released at all this must result from the fact that the husband contracted a second marriage, out of which grew a necessity to appropriate after his death a part, or it may be the whole, of his interest in the entire property once charged with the payment of community debts.

It can not be claimed that any statute exists which by fair construction releases the charge upon interest inherited by heirs on the occurrence of the facts relied upon in this case.

The law, for a most beneficent purpose, does subordinate the claims of creditors, even though secured by lien, unless acquired in a given manner, as well as the claims of heirs, to the right of a widow to an allowance in lieu of exempted property not existing in kind; and to this heirs and creditors must submit simply because the law declares that they shall.

Under the operation of an existing law a charge for the payment of the debts of a deceased person may be made to yield to make up the allowance to a widow in lieu of exempt property, and so even though the charge exists in the form of a lien given by contract during the life of the testator or intestate, unless the contract be executed in such manner as to cut off the widow's right. Rev. Stats., art. 2000; Green v. Crow,

17 Texas, 180; Reeves v. Petty, 44 Texas, 249; McLane v. Paschal, 47 Texas, 366; Horn v. Arnold, 52 Texas, 164; Griffie v. Maxey, 58 Texas, 214.

This is permissible, because creditors contract with reference to the law, and know that their rights, in so far as they depend on the existence or nonexistence of the debtor's family at the time of his death, must stand or fall on the application of the law to the facts that may exist at the time of his death.

In the case before us the rights of creditors of the community estate of T. M. Hoffman and his first wife were fixed at the time of her death in so far as her children claim through her.

The law then charged their inheritance, as did it that part of the common estate cast upon their father, with the payment of the community debts, and not with the payment of only one-half of such debts.

As between the father and children of that marriage it was the right of the one to pay one-half of the common indebtedness and to have the other half paid by the other, but the entire community estate was liable to creditors and stood charged with the payment of debts, except as this may have been affected by exemptions.

As against her heirs the rights of creditors of the community were fixed at the date of her death; as they, through property inherited, were bound then they are bound now; property then inherited by them is charged now as it was then; if it was liable then, as between themselves and creditors, to payment of only one-half of the common indebtedness, that is its liability now; and if it was then liable to sale for payment of all common indebtedness such is its liability now, unless their father had power by his own act and without the consent of creditors to remove the charge from their inheritance in any manner other than by payment of the debts for which the law expressly gave the charge.

The statutes do recognize the fact that the family relation of a debtor at time of his death, under given conditions of his estate, may seriously affect and in some cases entirely defeat the rights of creditors to payment therefrom, but they nowhere recognize the fact that this shall ever operate to the injury of the creditor, in so far as his right exists against third persons, by reason of contract, or by reason of the fact that such third persons hold property, by inheritance or otherwise, charged with payment of a debt the deceased may have been under obligation to pay, in whole or in part, as principal or as surety.

If T. M. Hoffman had died before his first wife did, leaving an estate that did not furnish in kind to his widow the exempt property, and indebted as was he when his first wife died, who would contend that all the community property not necessary to make up the widow's allowance in lieu of exempt property was not subject to the claims of creditors, or that payment of their claims, in so far as the residue of the estate would do so, should be to any extent denied because property that might other-

wise have been appropriated to that use went to make up the widow's allowance, whereby the shares of heirs might be entirely defeated?

If it took half the estate to make up the allowance, who would claim that the children would be entitled to the residue on making payment of one-half of the debts which the law declares shall be a charge upon all the property of the common estate not exempt from forced sale or necessary to furnish an allowance in lieu thereof? Where is the difference in principle between the case here supposed and that at bar?

None can arise from the fact that the first wife would have owned one-half of the property thus withdrawn from the reach of creditors, for her right to the extent of the allowance if the estate were insolvent would not rest on the fact that she had an interest in the property from which the allowance would be taken, for if the property were the separate estate of her husband the allowance would have been the same, and as fully withdrawn from the claims of creditors and heirs of the husband not entitled under the statutes to participate in it as could it possibly be when taken from community property.

The difference can not be found in the fact that the allowance in this case is made to the second wife out of her husband's interest in the common estate of himself and his first wife; for, as before said, it matters not whether the allowance comes from property in which her husband owned an interest in common with others or from property which in its entirety he owned in his own separate right, for it is *from his estate* the allowance must come in all cases.

The decisions of this court may be searched from its organization down and none will be found containing the slightest intimation that under the facts supposed all the common estate remaining after taking out the allowance in lieu of exempt property is not subject to the claims of creditors.

It is not believed that there is any difference in principle in the matter now under consideration between the case supposed and that before us, and the property not withdrawn from creditors and heirs through the allowance to the widow must remain subject to the payment of all community debts of the husband and first wife, simply because in withdrawing so much of the estate from the claims of creditors and heirs the Legislature has not manifested any intention that this shall in any respect operate to relieve from the claims of creditors any part of the estate once charged with the payment of debts, further than this is necessarily done to the extent of the allowance.

Suppose the father immediately after the death of the first wife had misappropriated one-half of their common estate, consisting of money or other property that neither heirs nor creditors could follow, or that he had deliberately destroyed so much of the estate, would it be contended, while this as between the father and children of the first wife would en-

title the latter to her half of the estate undisposed of, that this would relieve any part of the estate still remaining from the claims of creditors? Certainly not, for the statute declares that it all stands charged with all community debts except such part as is exempt from forced sale.

The law, applied to a condition brought about by the volition of husband and wife—marriage—creates a charge upon his estate, whether it consists of his separate or of their community property, at his death in favor of the surviving widow, minor children, and unmarried daughters remaining with the family to the extent of exempt property, or an allowance in lieu thereof if it does not exist in kind, which is conceded to be superior to the claims of creditors or heirs; and this furnishes an instance in which the law permits the act of a husband or father to create a charge upon his estate at his death superior to the claims of creditors.

The law applied to the *status* creates this charge, but it is not within the power of a survivor of a community to relieve from the charge placed upon it by law any of the common estate.

It may be squandered, destroyed, or in any manner placed where creditors may not be able to reach it, but the right of creditors to subject it to the payment of their claims can not be denied by heirs on the ground that through some act of the ancestor or common owner, authorized by law, a part or the whole of his estate becomes liable to a claim superior to that of the common creditors of both.

If two persons should contract a joint debt and give mortgage on land or other property held by them as tenants in common to secure it, could it be claimed, in the event of the subsequent marriage and death of one of them, leaving a widow but none of the property exempted from forced sale, that the surviving debtor was entitled to have his one-half of the mortgaged property released from liability to pay the entire debt on his payment of one-half of it, on the ground that the interest of the deceased co-owner had been applied to raise an allowance for the widow in lieu of exempt property not existing in kind? To this inquiry there could be but one answer.

Suppose A should borrow money and give his own personal obligation therefor, but should secure that by a mortgage on land owned by himself and B as tenants in common, both executing it; that A should subsequently marry and die, leaving a widow but not the exempt property in kind, and that his share of the mortgaged property was bound to raise the allowance to his widow in lieu of exempt property. Under such facts could the surviving mortgagor, whose sole obligation is in the nature of a surety, because his property is bound, be heard to claim that he is entitled to have his half of the mortgaged property released on payment of one-half of the mortgage debt, because the law had applied the interest of his comortgagor, the real debtor, to a claim superior to that secured by the mortgage? Such a claim could not prevail, simply because by con-

tract the surviving mortgagor had charged his property with the payment of the debt, and he could not have it relieved from this liability because the interest of his comortgagor had been applied by the law to a claim superior to that the mortgage was given to secure.

A charge created by law is as effective as a charge created by contract, and what in cases of this character will not relieve from the one will not relieve from the other.

Illustrations might be given involving all the relations in which property is held in common, all the liabilities arising from contract or growing out of the holding of property charged by law with the payment of debts, as well as liabilities arising from the relations of co-ownership and principal, surety, and creditor, but they would all result in the same inevitable conclusion, that when by contract or operation of a statute a charge is fixed upon property, this can not be released as to a part of the property so charged by reason of the fact that the other part under and per force of the law is subjected to a superior charge.

It matters not that the facts which give the superior charge may have come into existence since the inferior charge arose, if the superior arises from the application of a law, in force when the inferior attached, to a state of facts to which it was contemplated it should apply.

The exemptions to a single man are few and of small value, but if he contracts debts and subsequently marries, the exemptions from forced sale to enforce the payment of those debts will be the exemptions applicable to his condition at the time an effort may be made to subject his property to their payment if there has been no change in the laws regulating exemptions, and if he dies the exemptions or allowances to his widow or family will be determined by the same rule; and this is so simply because the parties knew when debts were created what the law was and contracted with reference to it, and with knowledge that the debtor might marry and thus the extent of his right to exempt property be increased.

As was said in Green v. Crow: "Creditors have rights to the assets superior to that derived from heirship under the general laws of distribution. But the creditors themselves have no rights against the claim of the widow and children to the allowance; consequently the heirs, whose rights are inferior, can have none." 17 Texas, 180.

This was said in a case not involving the same facts as this, but it asserts a rule believed to be without exception under the statutes of this State in the absence of such a contract as is provided for in article 2000, Revised Statutes, and nothing to the contrary can be found in the former decisions of this court.

The decision in Redding v. Boyd simply holds that the interest inherited by the children of a deceased mother in community property can not be subjected to the payment of a debt contracted by their father after their mother's death.

The administrator in that case was shown to have applied a part of the proceeds of a community estate owned by the intestate and his first wife to a debt contracted after her death—his separate debt—and it was held that in adjusting the rights of the heirs of the wife the sum so owed must be charged to the husband's interest in the common property, although this might not leave of his estate enough to pay the allowance of a second wife, which must be taken from the estate of the deceased husband.

It was said in that case that the community interest of the first wife could not " be taxed with an allowance to the widow and child of a subsequent marriage," and the intimation is that for this the widow should look to the administrator who had improperly applied to the payment of debts a sum which should have gone to the widow and child as an allowance.     The correctness of that decision can not be questioned, but it did not involve the question decided in this.

The difference is evident between a holding that an estate can not be charged with debts for which it never was liable, and a holding that an estate expressly charged by law with liability for a debt may be relieved from that liability without the consent of the creditor, on the ground that the law subjects the estate of a codebtor also liable to some claim superior to the common indebtedness.

The other cases cited can have no application to the question under consideration further than that they establish the proposition, about which there can be no controversy, that the allowance to a widow and children must be taken from the estate of the deceased husband or father.

It must be conceded that the father could not, directly or indirectly, appropriate to his own benefit or to the benefit of his second wife any part of the share of his children in the common estate which vested in them through inheritance from their mother; but this does not meet the question, for the law may and does appropriate so much of *his estate* as is necessary to make up allowance to his widow; and the fact that this may cast the burden of community indebtedness on the residue of the common estate of the husband and first wife can not make any difference, for over this matter the Legislature had complete control, and heirs can only take as the law permits them to take.

They inherited the share of their mother in the common estate, but took it charged, so far as its creditors were concerned, with the payment of all community debts, and neither the law nor the act of their father subsequently imposed upon it any other charge; but the law in force at the time of descent cast, on account of the subsequent marriage and death of the father, did fix upon his estate, in whatever consisting, a charge in favor of his surviving widow superior to that of creditors and paramount to the right of the children to have his estate in the common property applied, so far as necessary, to payment of one-half of the community debts.

The difference of opinion in this case probably arises from an effort on the one side to apply what at first view may seem to be equitable principles for the adjustment of the rights of the parties, while on the other it is believed that the statutes leave no room for such application. Whatever equities may have existed between the father and children, it is not believed that any exist between the latter and creditors of the common estate which would operate to the advantage of the children.

If, however, we could consider the basis of the claims of creditors and of heirs, the equitable principles that would flow from them it is believed would be found to be in entire harmony with the statutes and to furnish the foundation on which they rest.

An heir has no inherent right to the property owned by an ancestor at time of death, but becomes entitled under the law, and what that gives the heir takes and nothing more.

In the absence of constitutional restraint, the Legislature might provide that the children of a deceased person should take his property freed from the ancestor's debts; and it has full power, as seems right, to require the heir to take the inheritance charged with payment of the ancestor's debts. That is just what the statutes do, and of this the heirs can have no just ground for complaint. Their *equities* are not taken away by the enforcement of such a law, even when under the operation of another existing law some part of a fund also once liable for the payment of a part or the whole of the same debt is applied to another purpose deemed of higher standing or more urgent necessity.

It may fairly be presumed that the consideration for just claims held by creditors against an estate went to build up or create the estate, to the maintenance of children, or to some purpose of which they have had the benefit; and if in a contest between creditors and heirs equitable considerations are to be looked to, can it be that children ought to hold an estate inherited, while creditors whose money, property, or labor paid for it should go unpaid, even though the law has withdrawn from the reach of such creditors a fund once liable to pay a part or the whole of the debt, and this was appropriated to a purpose in no way pecuniarily beneficial to the heirs?

Delivered December 26, 1890.